Original

Approved: _____
NICHOLAS FOLLY/JARED LENOW
Assistant United States Attorneys

Before:    HONORABLE KATHARINE H. PARKER
           United States Magistrate Judge         **22 MAG 4184**
           Southern District of New York

- - - - - - - - - - - - - - - - x
                                 :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA         :
                                 :  Violations of
            - v. -               :  7 U.S.C. §§ 9(1) & 13(a)(5);
                                 :  17 C.F.R 180.1;
EDDY ALEXANDRE,                  :  18 U.S.C. §§ 1343 & 2
                                 :
            Defendant.           :  COUNTY OF OFFENSES:
                                 :  NEW YORK
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   JOSEPH STRAWMAN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

### COUNT ONE
### (Commodities Fraud)

   1.   From in or about September 2021, up to and including in or about May 2022, in the Southern District of New York and elsewhere, EDDY ALEXANDRE, the defendant, willfully and knowingly, directly and indirectly, in connection with a swap, a contract of sale of a commodity in interstate and foreign commerce, and a contract for future delivery on ad subject to the rules of a registered entity, used and employed, and attempted to use and employ, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (1) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (2) making, and attempting to make, an untrue and misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (3) engaging, and attempting to engage in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon

1

persons, to wit, ALEXANDRE, in the course of soliciting investments in a cryptocurrency and foreign currency exchange("FOREX") investment platform, made false and misleading statements to current and prospective investors about, among other things, the manner in which he invested their funds and the performance of their investments, and misappropriated investor funds for uses inconsistent with his representations to investors and for his own benefit.

(Title 7, United States Code, Sections 9(1) and 13(a)(5); Title 17, Code of Federal Regulations, Section 180.1; Title 18, United States Code, Section 2.)

## COUNT TWO
**(Wire Fraud)**

2.   From in or about September 2021, up to and including in or about May 2022, in the Southern District of New York and elsewhere, EDDY ALEXANDRE, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, ALEXANDRE, in the course of soliciting investments in a cryptocurrency and FOREX investment platform, made false and misleading statements to current and prospective investors about, among other things, the manner in which he invested their funds and the performance of their investments, and misappropriated investor funds for uses inconsistent with his representations to investors and for his own benefit.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.   I have been a Special Agent with the FBI for approximately five years. I am currently assigned to a squad that investigates white collar crimes, including complex financial and securities and commodities fraud crimes. I have participated in investigations of such offenses, and have made

2

and participated in arrests of individuals who have committed such offenses.

4.   The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including, but not limited to: (a) trading records, bank records, and records of electronic communications; (b) publicly available information, including social media posts; (c) conversations with, and reports of interviews with, non-law enforcement witnesses; and (d) videos and photographs.  Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation.  Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part.  Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

## Overview of the Fraudulent Scheme

5.   From in or about September 2021, up to and including in or about May 2022, EDDY ALEXANDRE, the defendant, operated EminiFX, Inc. ("EminiFX"), a purported investment platform that ALEXANDRE founded, and for which he solicited more than $59 million in investments from hundreds of individual investors. ALEXANDRE marketed EminiFX as an investment platform through which investors would earn passive income through automated investments in cryptocurrency and foreign exchange ("FOREX") trading.  ALEXANDRE offered his investors "guaranteed" high investment returns using new technology that he claimed was secret.  Specifically, ALEXANDRE falsely represented to investors that they would double their money within five months of investing by earning a 5% weekly return on their investment using a "Robo-Advisor Assisted account" to conduct trading. ALEXANDRE referred to this technology as his "trade secret" and refused to tell investors what the technology was.[1]  Each week EminiFX's website falsely represented to investors that they had

---

[1] Based on my training, experience, and participation in this investigation, I know that "Robo-Advisor" investment platforms typically utilize complex computer algorithms to administer investment portfolios.  Some robo-advisors are entirely automated, while others involve human assistance.

3

earned at least 5% on their investment, which they could withdraw or re-invest.

6. In truth and in fact, and as EDDY ALEXANDRE, the defendant, well knew, EminiFX did not earn 5% weekly returns for its investors. ALEXANDRE did not even invest the vast majority of investor funds entrusted to him, and ALEXANDRE sustained losses on the limited portion of funds that he did invest. Instead of using investors' Funds as he had promised, ALEXANDRE misdirected at least approximately $14,700,000 to his personal bank account and failed to invest the vast majority of the investors' funds.

7. ALEXANDRE used a multi-level marketing ("MLM") structure through which EminiFX investors received commissions for recruiting others to join EminiFX. This MLM structure appears to have influenced the rapid growth of EminiFX.

8. EminiFX continues to operate to this day.

### Background on Cryptocurrency and FOREX

9. Cryptocurrencies such as Bitcoin ("BTC") are decentralized, peer-to-peer forms of electronic currency. Cryptocurrency is a digital representation of value that can be digitally traded and functions as (1) a medium of exchange; (2) a unit of account; and/or (3) a store of value, but does not have legal tender status. Unlike "fiat currency," like the U.S. dollar and the Euro, cryptocurrency is not issued by any governmental entity and functions only by agreement within the community of users of that particular currency.

10. FOREX contracts involve the right to buy or sell a certain amount of a foreign currency at a fixed price in U.S. dollars. Profits or losses accrue as the exchange rate of that currency fluctuates on the open market. Forex markets are among the most active markets in the world in terms of dollar volume.

11. Based on my training, experience, participation in this investigation, and conversations with representatives from the Commodity Futures Trading Commission, I know that cryptocurrencies such as BTC and certain types of investments in foreign currency, constitute commodities under federal law.

4

**Relevant Person and Entities**

12.  Based on my participation in this investigation, I have learned the following, in substance and in part:

a.  EminiFX, Inc. ("EminiFX") is a New York corporation that was formed on or about September 20, 2021, by EDDY ALEXANDRE, the defendant.  EminiFX has an office located in New York, New York (the "Office").

b.  EminiFX operates a website, located at eminifx.com (the "Website"), which was created on or about September 20, 2021 (i.e., the same date EminiFX was incorporated).  According to its Website, EminiFX is an investment platform through which investors can purportedly earn passive investment returns through automated investments in cryptocurrency and FOREX trading.  An image captured from a video that is displayed on the Website is shown below:



c.  The Website also offers various "membership levels," depending on how much an investor invests.  For example, investors who invest $500 to $2,499 receive a Bronze Package, and investors who invest $2,500 to $4,999 receive a Silver Package.  There are twelve membership levels.  Each investor purportedly receives a "fully serviced Robo-Advisor Assisted account Trading Account [sic]," and "AI Software" when they invest.

d.  EminiFX charges a monthly service fee of $49.99 per month, as well as certain processing fees for new members

5

(15%), and additional fees ranging from .75% to 1.5% for certain transactions, including withdrawals.

   e. ALEXANDRE is the founder, president, CEO, and sole owner of EminiFX.

   f. Neither EminiFX nor ALEXANDRE has ever been registered with the Commodity Futures Trading Commission in any capacity.

**ALEXANDRE Solicits Investments in EminiFX By Promising Investors They will Double Their Money**

 13. Based on my review of publicly available information about EminiFX, my participation and the participation of other members of my investigative team in various witness interviews, and my review of videos of EminiFX virtual weekly investor meetings ("Weekly Meetings"), I have learned that EDDY ALEXANDRE, the defendant, induced investors to invest and stay invested in EminiFX by falsely representing to investors that (1) their money would be invested in cryptocurrency and FOREX through an automated investment trading platform; and (2) they would earn a 5% weekly return on their investment. Specifically, based on my review of a recording that was captured by an investigator for the Commodity Futures Trading Commission, I have learned that on or about April 28, 2022, ALEXANDRE hosted a Weekly Meeting, during which he stated the following, in substance and in part:

   a. EminiFX has dedicated trading desks, computers, and strategies, that give investors access to investment returns that they would not otherwise have access to.

   b. The vision of EminiFX is to harness the power of technology. EminiFX uses an automated trading strategy. The company's "core product" is a robo-assisted advisor account, which ALEXANDRE referred to as "RA3."

   c. ALEXANDRE stated that many EminiFX investors have asked ALEXANDRE what automated technology EminiFX uses for its trading platform. Instead of telling investors what technology the company used, ALEXANDRE claimed that the technology was highly secret, stating that it is "our trade secret," and "we keep it to ourselves."

        d.   At several points during ALEXANDRE's presentation he represented that investors would earn at least 5% returns through EminiFX every week.  Specifically, ALEXANDRE stated that investors would earn 5% every week (each Friday), and that within five months they would double their investment.  As an example, ALEXANDRE said that if an investor were to invest $10,000 initially, within five months they would have $20,000.  ALEXANDRE also stated that if an investor invested $1,000, they would be a millionaire within three years, as long as the investor did not make any withdrawals.

        e.   ALEXANDRE represented that EminiFX would trade FOREX, cryptocurrency, options, and futures.  ALEXANDRE did not disclose that his trading activity since EminiFX's inception had resulted in large losses, as set forth below.

        f.   An image of ALEXANDRE at the April 28, 2022 Weekly Meeting is shown below:



    14.   Based on my participation in an interview of an individual ("Individual-1") who attended another Weekly Meeting, I have learned that EDDY ALEXANDRE, the defendant, made similar representations during that meeting about EminiFX.  Specifically, Individual-1 stated the following, in substance

7

and in part, about the Weekly Meeting that Individual-1 attended:

      a. ALEXANDRE said in substance and in part, that EminiFX would guarantee 5% returns on investments and that the more an investor invested, the more money they would make. For example, ALEXANDRE stated that if an investor invested $100,000, they would be a millionaire within two to three years. ALEXANDRE also represented that ten EminiFX investors had recently become millionaires and that ALEXANDRE had called to congratulate them.

      b. ALEXANDRE indicated that EminiFX had experienced traders who invested on behalf of its investors. However, ALEXANDRE never stated what EminiFX was investing in.

15. In addition to the Weekly Meetings described above, EminiFX solicited prospective investors through the Website, in-person meetings and events, and through a network of promoters. As noted above, EminiFX used an MLM structure that incentivized existing investors to recruit additional investors.

### **Investors Were Led to Believe that They Had Earned Between 5% and 9.99% Each Week**

16. As noted above, EDDY ALEXANDRE falsely represented to investors that they would earn a minimum of 5% each week, and that existing investors *had* earned such profits. Based on my review of publicly available social media content posted by EminiFX investors I have learned that the EminiFX Website also falsely represented to investors that their account balances increased each Friday by between 5% and 9.99% (the "Fraudulent Returns"). Specifically, certain EminiFX investors have posted publicly available videos in which they log in to their EminiFX account through the Website and display the EminiFX investor "Dashboard." For example, a publicly available video posted on a social media website shown below indicates that the EminiFX "weekly profit" for a given week was listed as 9.94% on the Website.



17.  However, as set forth below, based on my review of financial records, it appears that these representations about weekly profits were false, and that in truth and in fact, and as EDDY ALEXANDRE, the defendant well knew, EminiFX had not earned its investors any profit, but rather: 1) ALEXANDRE failed to invest nearly all of the investor funds he received; and 2) ALEXANDRE suffered losses with respect to the investor funds that he diverted to invest in his own personal trading account.

18.  Furthermore, based on my review of a report and a video documenting surveillance of the EminiFX Office that was conducted by the FBI on or about March 22, 2022 (the "Surveillance"), I have learned that the Office contained additional evidence demonstrating that ALEXANDRE fabricated the Fraudulent Returns.  Specifically, as shown in the photograph on the left below, law enforcement observed what appeared to be handwritten summaries of the Fraudulent Returns written on a white board surface in the EminiFX Office.  While conducting the Surveillance, law enforcement observed the following writing on another white board surface in the office, which is shown in the photograph on the right below: "Never less than 5%[,] never more than 9.98%!!!"  Based on my training, experience, and participation in this investigation (including the review of financial records described below), this statement appears to indicate that the "weekly profit" was not based on actual investment returns but was fictitious.  In particular, the statement that the profits are never less than 5% and never exceed 9.99% is inconsistent with actual investment returns, in which returns could not be predicted to fall within a narrow range such as 5% to 9.99%, and would rarely consistently yield returns as high as the Fraudulent Returns.

9



### ALEXANDRE Failed to Invest in the Manner He Promised and Misappropriated Investor Funds

19. Based on my review of bank records, I have learned that beginning in or around September 2021, EDDY ALEXANDRE, the defendant, opened a series of EminiFX bank accounts that he used to receive approximately $59 million in EminiFX investor deposits. As set forth below, ALEXANDRE failed to invest these investor funds in the manner he had promised; failed to invest the vast majority of these investor funds at all; and misdirected over $15 million of investor funds into his personal accounts. Notably, the diverted funds far exceeded the fees that EminiFX represented to investors that it would collect. Specifically, I have learned the following, among other things:

   a. On or about September 21, 2021, ALEXANDRE opened a bank account in the name of EminiFX, with an account number ending in 0637 (the "EminiFX 0637 Account"). ALEXANDRE was listed as the sole signatory on the account.

   b. Beginning in or around October 2021, and continuing through in or around May 2022, the EminiFX 0637 Account received deposits of more than $59,000,000 from what appeared to be hundreds of EminiFX investors. For example, references on some of the deposits included terms that indicated the deposits were investor funds, such as: "EminiFX," "investment in cryptocurrencies," "investment," "business investment," "for investment," "capital investment," "group investment," "market investment," "deposit in currency trading account," "open account," and "funding my account." The deposits also sometimes included what appeared to be EminiFX user IDs for certain investors.

10

c. The deposits were made in cash in at least approximately 99 different bank branches, as well as through checks, wire transfers, and a digital payment network that allows individuals who have accounts at different banks to send funds to each other.

d. Out of the more than $59,000,000 deposited by investors into the EminiFX 0637 Account, a limited amount of investor funds appears to have been used for the purpose of trading. Specifically, between December 2021 and March 2022, ALEXANDRE transferred a total of approximately $9,040,000 to an electronic trading platform (the "Electronic Trading Platform") account in ALEXANDRE's name that he had opened in December 2019. These funds were first sent to ALEXANDRE's personal bank account, and then to the Electronic Trading Platform. ALEXANDRE primarily traded individual equities and single-equity options on the Electronic Trading Platform (not FOREX or cryptocurrency as represented to investors on the EminiFX website). As of April 27, 2022, because of significant trading losses sustained by ALEXANDRE, his account balance on the Electronic Trading Platform had declined by approximately $6,270,282, and only $2,769,718 of equity remained in his trading account.

e. ALEXANDRE sent an additional $30,000 in investor funds to a digital cryptocurrency wallet account that was registered in his name.

f. ALEXANDRE sent at least approximately $15,025,100 in investor funds that originated from the EminiFX 0637 Account to ALEXANDRE's personal checking account, either directly, or through separate EminiFX bank accounts, as described below. As described above, approximately $9,040,000 that originated from the EminiFX 0637 Account was sent to the Electronic Trading Platform to a trading account in ALEXANDRE's name. As of April 11, 2022, ALEXANDRE's personal checking account did not reflect any additional trading activity.

g. In addition to the funds described above, *see supra* ¶ 19(f), ALEXANDRE used over $175,000 in investor funds from the EminiFX 0637 Account to pay for personal expenses, including the following:

i. On or about November 20, 2021, ALEXANDRE used $155,000 in investor funds to purchase a BMW car.

11

    ii. ALEXANDRE spent at least an additional $13,000 on car payments. For example, on or about December 23, 2021, ALEXANDRE withdrew an official check for $10,000 that was made out to "Mercedes Benz."

  h. ALEXANDRE also used investor funds from the EminiFX 0637 Account to make donations to charity organizations. For example, on or about January 20, 2022, ALEXANDRE issued a $15,000 check to a charitable organization, with the memo line "Donations."

  i. ALEXANDRE appears to have used a substantial amount of investor funds from the EminiFX 0637 Account to rent and furnish office space for EminiFX and to hold events on behalf of EminiFX. For example, on or about December 21, 2021, ALEXANDRE issued a check for $11,369.69, made out to an event venue in New York City, with the memo line "Final Balance for 2021 Gala." ALEXANDRE also issued a similar check to the same event venue for $30,000.

  j. ALEXANDRE also used a substantial amount of investor funds from the EminiFX 0637 Account to pay legal fees. For example, on or about January 24, 2022, and February 17, 2022, ALEXANDRE issued checks in the amount of $20,000 and $100,000 to a law office (the "Law Office"), each with the subject line "retainer." Based on my review of public source material, it appears the Law Office specializes in personal injury cases.

 20. Based on my review of bank records, I have learned that on or about October 29, 2021, EDDY ALEXANDRE, the defendant, opened another EminiFX bank account ending in account number 2914 (the "EminiFX 2914 Account"). Based on my review of EminiFX 2914 Account bank records, I have learned the following, among other things:

  a. The EminiFX 2914 Account had an account balance of less than $100 until in or around February 2022, when it received over $500,000 in investor funds from the EminiFX 0637 Account.

  b. Between on or about March 14, 2022, and March 21, 2022, approximately $45,945,219.79 in investor funds was transferred from the EminiFX 0637 Account to the EminiFX 2914 Account.

   c. Approximately $6,000,000 of the funds that originated from the EminiFX 0637 Account were sent to the EminiFX 2914 Account, and then transferred to a personal bank account for ALEXANDRE.

   d. As of on or about May 4, 2022, the EminiFX 2914 Account had a balance exceeding $35,000,000.

 21. Based on my review of bank records I have learned that ALEXANDRE opened at least two additional EminiFX accounts. ALEXANDRE was the sole signatory on all the EminiFX bank accounts identified herein until on or about February 25, 2022, when another individual was added as a signatory on some of the accounts.

 22. Based on my review of publicly available social media content posted by EminiFX investors, I have learned that certain investors have successfully withdrawn funds from the EminiFX platform. Based on the bank account activity described above, which shows that ALEXANDRE failed to invest the majority of investor funds, it appears that the only way that EminiFX can fund investor withdrawals is by using the funds of existing investors, or the funds of new investors, in a Ponzi-like fashion.

 23. Based on my review of publicly available social media content posted by EminiFX investors, I have learned that in addition to accepting investor deposits in U.S. dollars, EminiFX has also accepted investor funds and issued payments to investors using Bitcoin, which is a cryptocurrency.

**The EminiFX Office Was Used to Perpetrate the Fraud Scheme**

 24. As noted above, on or about March 22, 2022, law enforcement conducted surveillance of the EminiFX Office. During the Surveillance, law enforcement observed a series of handwritten notes on white board surfaces, such as those described above, *see supra* ¶ 18. One section of the white board included the last four digits of certain bank accounts, one of which was the EminiFX 0637 Account described above (i.e., the bank account that received more than $59 million in investor funds).

 25. In addition to my observations of the EminiFX Office during the Surveillance, I have also learned that the Office has

been used to host events for current and prospective EminiFX investors. For example, based on my review of statements that were made by EDDY ALEXANDRE, the defendant, during the April 22, 2022 Investor Meeting, I have learned that ALEXANDRE stated the following, in substance and in part, about the EminiFX Office:

a. ALEXANDRE indicated that the prior Sunday, EminiFX had hosted its first in-person event of 2022, which took place at the EminiFX Office. ALEXANDRE attended the event, which he described as a "tremendous success."

b. ALEXANDRE also stated that the event had "put to rest many of the questions" that investors had had about whether the EminiFX address was fake and whether the office did not exist. ALEXANDRE described these questions as "a bunch of nonsense."

c. ALEXANDRE also indicated that after the Sunday event at the EminiFX office, EminiFX investors, including existing investors, invested more than an additional ten percent in capital within a few days of the Event, bringing the total of EminiFX investor funds to over $114 million.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of EDDY ALEXANDRE, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

      /s/ Joseph Strawman    W/permission
JOSEPH STRAWMAN
Special Agent
FBI

Sworn to before me this
~~12th~~ 11th day of May, 2022   By reliable electronic means (phone)

_Katharine H. Parker_
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK