UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                    :

UNITED STATES OF AMERICA,               :

                                               :

            -v-                       :          22 Cr. 326 (JPC)

                                             :

                                           :       <u>OPINION AND ORDER</u>

EDDY ALEXANDRE,                     :

                    Defendant.      :

                                           :

------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Defendant Eddy Alexandre is charged in an indictment with one count of commodities fraud, in violation of 7 U.S.C. §§ 9(1) and 13(a)(5), 17 C.F.R. § 180.1, and 18 U.S.C. § 2, and one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Defendant has filed a motion seeking, *inter alia*, an order authorizing him to either conduct pretrial depositions pursuant to Federal Rule of Civil Procedure 15(a) of, or take testimony at trial via live closed-circuit television ("CCTV") from, corporate representatives of two overseas companies. Dkt. 39 ¶ 3. For the reasons that follow, the Court finds that the relevant standards of Rule 15 have been met and grants Defendant's motion to conduct pretrial depositions of these witnesses.

## I. Background

### A.    Facts[1]

From September 2021 to May 2022, Defendant operated EminiFX as an investment platform "through which investors would earn passive income through automated investments in

---

[1] The facts contained in this section do not appear to be in dispute, unless otherwise indicated, and are drawn primarily from the allegations in the Complaint, Dkt. 1 ("Complaint"),

cryptocurrency and foreign exchange . . . trading." Complaint ¶ 5. Defendant allegedly purported to conduct trading using "trade secret" technology, described as a "Robo-Advisor Assisted account," and guaranteed at least 5% weekly returns. *Id.* EminiFX received over $59 million in deposits from hundreds of individual investors. *Id.* ¶ 19(b).

Defendant claims that, to collect investments, he opened an account in EminiFX's name with CoinPayments, an online cryptocurrency platform. Motion at 26. While CoinPayments operated in Estonia at the time of the charged conduct, the company appears to have since moved to Lithuania. Opposition at 37 & n.1. CoinPayments allows users "to set up a wallet to store, send, and receive cryptocurrency." Motion at 26. Using "an application programming interface" on the EminiFX website, EminiFX members transferred fiat and crypto currencies to EminiFX's CoinPayments account where the assets were held in the form of Bitcoin. *Id.* at 26-27. Defendant also used an account with KOT4X, another online cryptocurrency broker, in connection with EminiFX, *id.* at 27, and funded that account with, *inter alia*, a transfer from EminiFX's CoinPayments account, *id.*; Opposition at 37. KOT4X operates in Cyprus. Opposition at 37.

The Government alleges that, in actuality, EminiFX was a "massive Ponzi scheme." Dkt. 52 ("Oct. 5, 2022 Oral Arg. Tr.") at 38:11; *see also* Complaint ¶ 22. According to the Government, each week, the EminiFX website would falsely represent that investors were earning 5% returns. Complaint ¶¶ 5, 16. But in truth, Defendant allegedly "failed to invest the vast majority of the investors' funds" he received, *id.* ¶ 6, and "sustained over $6 million in [undisclosed] losses on the limited portion of funds that he did invest," Opposition at 4; *see also* Complaint ¶ 19(d). In

---

the Indictment, Dkt. 15 ("Indictment"), the Memorandum of Law in Support of Defendant's Motions to Compel Discovery and for Rule 15 Relief, Dkt. 40 ("Motion"), and the Government's Memorandum of Law in Opposition, Dkt. 50 ("Opposition"), and are assumed true only for purposes of resolving this motion.

addition, the Government alleges that Defendant pocketed approximately $14.7 million which he used for personal expenses such as a new BMW car.  Complaint ¶¶ 6, 19(i); Indictment ¶ 15(a); *see also* Opposition at 4.

**B.   Procedural History**

On May 11, 2022, Defendant was charged in a complaint with one count of commodities fraud and one count of wire fraud.  Complaint ¶¶ 1-2.  Defendant was arrested the following day, *see* ECF Minute Entry for May 12, 2022, and indicted on the same two charges on June 9, 2022, *see* Indictment ¶¶ 1-2.  Before the Court is Defendant's first set of pretrial motions.  As relevant to this Opinion and Order, Defendant seeks relief under Federal Rule of Criminal Procedure 15 in the form of "an order authorizing Mr. Alexandre to either conduct pretrial depositions of, or offer in-trial testimony via CCTV from, corporate representatives of CoinPayments and KOT4X."  Dkt. 39 ¶ 3.[2]  The Court heard oral argument on the motion on October 5, 2022.  *See* ECF Minute Entry for Oct. 5, 2022.

## II.  Rule 15 Standard

Under Rule 15(a), a district court may permit a party to depose a witness for use at trial "because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P. 15(a)(1); *see also United States v. Pham*, No. 12 Cr. 423 (AJN), 2015 WL 7871348, at *1 (S.D.N.Y. Dec.

---

[2] Defendant also seeks (1) a finding that the Commodity Futures Trading Commission, which also investigated Defendant's alleged fraud and initiated civil litigation against him, *see generally Commodity Futures Trading Comm'n v. Alexandre*, No. 22 Civ. 3822 (VEC) (S.D.N.Y.), and the court-appointed Receiver in that litigation "are part of the prosecution team in this case for the purposes of the prosecutors' discovery obligations" and (2) an order compelling the Government to produce materials in response to certain of Defendant's discovery requests.  *See* Dkt. 39 ¶¶ 1-2; Motion at 12-26.  Given the urgency in resolving Defendant's request under Rule 15 so appropriate steps can be promptly undertaken to try to secure the witnesses' testimony for trial, the Court decides that aspect of Defendant's motion first and will decide in due course the remainder of Defendant's motion.

4, 2015).  "The party seeking a Rule 15 deposition bears the burden of demonstrating that 'exceptional circumstances' exist."  *United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567, at *6 (S.D.N.Y. July 14, 2021) (quoting *United States v. Vilar*, 568 F. Supp. 2d 429, 437 (S.D.N.Y. 2008)).  To demonstrate "exceptional circumstances," the movant must show that "(1) the prospective witness is unavailable for trial, (2) the witness'[s] testimony is material, and (3) the testimony is necessary to prevent a failure of justice."  *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *cf. United States v. Buck*, 271 F. Supp. 3d 619, 622 (S.D.N.Y. 2017) ("Courts have applied the same standard used regarding Rule 15 depositions when evaluating whether to permit [live] testimony via [CCTV] . . . .").

"Unavailability" is evaluated "according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial."  *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).  "A movant must provide specific reasons for a witness's unavailability."  *Pham*, 2015 WL 7871348, at *1.  "Conclusory or speculative statements regarding unavailability are insufficient."  *United States v. Little*, No. 12 Cr. 647 (ALC), 2014 WL 1744824, at *1 (S.D.N.Y. Apr. 23, 2014); *see also United States v. Fargesen*, No. 21 Cr. 602 (LAP), 2022 WL 4110303, at *2 (S.D.N.Y. Sept. 8, 2022).

Judges in this Circuit have analyzed materiality for purposes of Rule 15 by looking at whether the testimony would be "highly relevant to a central issue in the case."  *United States v. Grossman*, No. 03 Cr. 1156 (SHS), 2005 WL 486735, at *2 (Mar. 2, 2005) (internal quotation marks and alteration omitted); *accord United States v. Mohamed*, No. 18 Cr. 603 (ARR), 2020 WL 1545522, at *2 (E.D.N.Y. Apr. 1, 2020); *see also United States v. Abu Ghayth*, No. 98 Cr. 1023 (LAK), 2014 WL 144653, at *2 (S.D.N.Y. Jan. 15, 2014) (explaining that to satisfy the materiality requirement, the movant must show that the proposed testimony is "more than merely

relevant" (citation omitted)).  "There is no requirement that the testimony being sought must surely acquit the defendant."  *Little*, 2014 WL 1744824, at *1; *accord Abu Ghayth*, 2014 WL 144653, at *2 (citation omitted).  Rather, it is sufficient that the testimony "challenge central aspects of the government's allegations."  *Buck*, 271 F. Supp. 3d at 623 (quoting *Grossman*, 2005 WL 486735, at *4).

Finally, "[w]hen the first two prongs of the exceptional-circumstances test are met, the third prong, necessity to prevent a failure of justice, is likely satisfied if there are no substantial countervailing factors militating against the taking of the deposition."  *Fargesen*, 2022 WL 4110303, at *2 (quoting *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *24 (S.D.N.Y. Jan. 18, 2017)); *see also Vilar*, 568 F. Supp. 2d at 442.  The nonmovant bears the burden of identifying countervailing factors.  *See Wey*, 2017 WL 237651, at *25.  Such factors may include, among other things, any "undue expense to the non-moving party and significant delays in trying the matter."  *United States v. Al Kassar*, No. 07 Cr. 354 (JSR), 2008 WL 4735269, at *2 (S.D.N.Y. Oct. 27, 2008).

### III.  Discussion

Defendant seeks to offer at trial testimony from corporate representatives of CoinPayments and KOT4X either via depositions taken pursuant to Rule 15 or live in-trial remote testimony via CCTV.  For reasons that follow, the Court concludes that Defendant has shown the unavailability of these witnesses, the materiality of their proffered testimony, and that their testimony at trial is necessary to prevent a failure of justice.

### A.    Unavailability

According to the Government, CoinPayments operated in Estonia during the period of the charged conduct and has since moved its operations to Lithuania.  Opposition at 37 & n.1.  And

the Government reports that KOT4X operates in Cyprus. *Id.* at 37.  Assuming, as the parties appear to, that corporate representatives for CoinPayments and KOT4X are located in Lithuania and Cyprus, respectively, such witnesses therefore would not be amenable to service of United States process. *See Johnpoll*, 739 F.2d at 709.  On August 15, 2022, Defendant sent requests to both companies to make witnesses available for a trial in the United States.  Motion at 28. "CoinPayments confirmed in writing on September 23, 2022 that it will not voluntarily make a witness available to testify at trial."  Dkt. 51 ("Reply") at 20; *see also Johnpoll*, 739 F.2d at 709 (finding a witness who refused to travel to the United States to be unavailable); *Fargesen*, 2022 WL 4110303, at *3 (same).  KOT4X had not responded to Defendant's request as of October 5, 2022, despite repeated follow up.  *See* Reply at 20; Oct. 5, 2022 Oral Arg. Tr. at 25:1-5.  Defendant contends he is not "required to wait" any longer to receive "a firm answer," Reply at 21, and the Court agrees, particularly with the trial scheduled to commence just over five months from today. *See Pham*, 2015 WL 7871348, at *3 ("Here, the Defendant's repeated failed attempts to contact [the witness] by telephone and by email likely demonstrate the requisite 'good-faith effort to produce [her] to testify at trial,' making her unavailable." (alteration in original) (quoting *Johnpoll*, 739 F.3d at 709)).  The corporate representative witnesses from CoinPayments and KOT4X therefore are unavailable for purposes of Rule 15.

B.    **Materiality**

The Court now turns to the materiality of the proffered evidence—"the core of the [Government's] argument" opposing Defendant's Rule 15 motion.  Oct. 5, 2022 Oral Arg. Tr. at 58:22-59:4.  Defendant proffers that the testimony from the CoinPayments and KOT4X corporate representatives would show that "a large amount of EminiFX members' assets were invested in cryptocurrency and other assets at these companies," Motion at 29, thereby challenging one of the

6

Government's core allegations, *i.e.*, that Defendant "failed to invest nearly all of the investor funds he received," *id.* (quoting Complaint ¶ 17).   Moreover, Defendant contends, "testimony from CoinPayments regarding the design and implementation of the [application programming interface] that connected EminiFX to CoinPayments" is further material because it "will undercut the prosecutors' arguments that Mr. Alexandre was lying when he told investors he was using 'automated technology.'"   *Id.* (citing Complaint ¶ 13(b)).

The Government disagrees.   It argues that the testimony is immaterial because (1) it would be cumulative of other record evidence, such as the underlying financial records from both companies showing transfers to and from EminiFX, which the Government intends to offer in its case-in-chief, Opposition at 41; (2) the Government does not dispute that EminiFX transferred funds to CoinPayments and KOT4X accounts, but rather argues that those funds were merely deposits rather than true investments, *id.* at 42; and (3) the Government would be willing to discuss a stipulation that EminiFX transferred funds to CoinPayments and KOT4X, *id.* at 42 n.2.   In essence, the Government's arguments largely boil down to the position that the proffered testimony is immaterial because the underlying facts can be proved by other means or are not in dispute.

True, the Court's materiality analysis considers whether the testimony would be "admissible and non-cumulative of other evidence."  *Abu Ghayth*, 2014 WL 144653, at *2 (citation omitted).  But the fact "[t]hat other documents and testimony may also be relevant to the defense does not mean that the witnesses' testimony will be so cumulative as to be immaterial."  *Fargesen*, 2022 WL 4110303, at *4.  Rather, materiality is primarily a question of *relevance*, not necessity. *See Vilar*, 568 F. Supp. 2d at 440; *Grossman*, 2005 WL 486735, at *2; *see also United States v. Salim*, 855 F.2d 944, 952 (2d Cir. 1988) (noting that Rule 15 "concentrates first on preservation

of testimony and only thereafter focuses on admissibility").  Evidentiary relevance under Federal

Rule of Evidence 401 is not "affected by the availability of alternative proofs." *Old Chief v. United

States*, 519 U.S. 172, 179 (1997); *see also 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 172 (2d

Cir. 2019) ("Litigants are generally entitled to present their evidence in the form of their

choosing.").  Rather, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less

probable than it would be without the evidence; and (b) the fact is of consequence in determining

the action."  Fed. R. Evid. 401; *see also United States v. Litvak*, 808 F.3d 160, 179 (2d Cir. 2015).

As noted above, Rule 15's materiality inquiry requires the Court to consider whether the proffered

evidence would be "highly relevant to a central issue in the case."  *Mohamed*, 2020 WL 1545522,

at *6 (finding anticipated witness testimony to be highly relevant and therefore material despite

potentially being "cumulative of testimony by defendants' other proposed witnesses").

  Here, testimony from the CoinPayments and KOT4X witnesses would be highly relevant

because the testimony would tend to disprove the Government's assertion that Defendant violated

the law when he "failed to invest nearly all of the investor funds he received."  Complaint ¶¶ 6,

17.  Defendant could reasonably urge the jury to view EminiFX's transfers of investor funds to

CoinPayments and KOT4X as themselves investments.  The Government of course may (and

likely will) argue at trial to the contrary: as it points out, the jury may very well conclude that these

transfers were merely deposits rather than true investments.  Opposition at 42.  But those

arguments are more appropriate for the jury than as a basis to deny the Rule 15 motion.  As noted,

the evidence need not "surely acquit" Defendant to be material, *Little*, 2014 WL 1744824, at *1;

rather, it merely must "challenge central aspects of the government's allegations," *Buck*, 271 F.

Supp. at 623 (quoting *Grossman*, 2005 WL 486735, at *4).  In fact, even if the jury determines

that the transfers were deposits, they also potentially could find that Defendant *believed* the

8

transfers were investments, which would go to the issue of *mens rea*. *See Mohamed*, 2020 WL 1545522, at *5 ("[T]he proffered testimony is material because of its relevance to *mens rea . . . .*"). Either way, the testimony as proffered would support a defense to the charged conduct, even if other evidence could potentially accomplish the same goal or if the Government may have counter-arguments to make at trial.

Furthermore, when considering whether the proffered testimony would be non-cumulative, the Court also considers the likely force of that testimony at trial. *See id.* at *6 ("Some aspects of the anticipated witness testimony . . . may be cumulative . . . .  However, . . . I see no reason why the defendants should not depose all of their witnesses to present the most thorough defense."). Even assuming the availability of additional evidence to establish the same or similar defense arguments, from Defendant's perspective, offering witness testimony to the jury may be preferable to a joint stipulation and the admission of various financial records.  For example, as Defendant points out, the CoinPayments and KOT4X records "are hardly self-explanatory" and so witness testimony would provide important "context for the services offered by [the companies] to EminiFx" thereby "facilitating jurors' understanding of the documents."  Reply at 22; *see also* Oct. 5, 2022 Oral Arg. Tr. at 65:16-23 (explaining that Defendant would be disinclined to sign a stipulation because "I want as close to live testimony as we can get to make these points as forcefully as we can").

As such, the Court finds that the proffered testimony from the CoinPayments and KOT4X corporate representatives would be material for purposes of Rule 15, even if somewhat cumulative, because it would be highly relevant to a primary defense against the charges, would assist the jury in understanding the evidence, and could help Defendant present the "most thorough defense" possible, *Mohamed*, 2020 WL 1545522, at *6.

### C.    Failure of Justice

Because Defendant has established the unavailability of the CoinPayments and KOT4X corporate representatives, and that their testimony at trial would be material, the Court presumes that the testimony is necessary to prevent a failure of justice "so long as there are no substantial countervailing factors militating against the taking of the depositions."  *Fargesen*, 2022 WL 4110303, at *5.  The Court is not persuaded that any such countervailing factors exist in this case.

First, the Government argues that "it may not be possible to obtain the requested Rule 15 depositions" in time for the March 27, 2023 trial date because, as a private party, Defendant would not be able to utilize the Mutual Legal Assistance Treaties ("MLATs") between the United States and Cyprus and Lithuania, and therefore would have to proceed by transmitting letters rogatory. Opposition at 44-45 & n.5.  And according to the Department of Justice's Office of International Affairs, the process of submitting letters rogatory to Lithuania and Cyprus could take anywhere between six months and one year.  *Id.* at 45.  But these concerns are speculative; there is no reason that Defendant should not be permitted to *try* to obtain the testimony before the scheduled trial date.  This is especially so given that the Government may have tools at its disposal that could help speed up the process.  *Cf. United States v. McLellan*, 959 F.3d 442, 476 (1st Cir. 2020) (noting that "the MLATs at issue do not explicitly preclude the government from using its discretion to lodge requests on behalf of criminal defendants" and that "[p]rosecutors have a duty to act in accordance with the obligations imposed on them as agents of justice, and where practicable, deploying the government's MLAT capabilities in such a manner would be a just way of fulfilling those obligations" (internal quotation marks and alterations omitted)).  While the Court is not ordering the Government to employ those tools, their potential availability increases the possibility that the at-issue Rule 15 depositions may be able to occur in time for trial.

Second, the Government expresses concerns that "Lithuania and Cyprus could grant the defendant's request in a manner that would prejudice the United States" such as by limiting the Government's ability to conduct cross examination, by mandating that the questioning be conducted entirely by the state police, or by the Court's inability to sanction witnesses for any perjury.  Opposition at 45.  Courts have considered and rejected similar concerns in the past.  *See, e.g.*, *Salim*, 855 F.2d at 949-52 (finding permissible a deposition conducted by a French magistrate outside the presence of either party when both parties had the opportunity to submit written direct and cross examination questions in advance, and further rejecting the notion that "depositions taken according to foreign law are inferior to those taken under United States law"); *Little*, 2014 WL 1744824, at *3 (disagreeing with the Government's suggestion that "absolutely no deposition could be taken" just because a "traditional American-style deposition" may not be possible; noting that "courts have upheld depositions where the district court, in permitting procedural modifications to a standard deposition, achieved substantial compliance with Rule 15" (internal quotation marks and alteration omitted)); *Grossman*, 2005 WL 486735, at *4 (rejecting the argument that "foreign depositions are inherently untrustworthy because they lack a realistic perjury sanction").  Apart from also being speculative, many of these concerns could likely be overcome by holding the depositions at an American embassy or consulate, where they could be conducted in a manner consistent with the American judicial system.  *Fargesen*, 2022 WL 4110303, at *5 (directing parties to attempt to hold depositions of foreign witnesses at an American embassy or consulate "so that U.S. officials can swear the witnesses and provide assurances of formality and accuracy"); *Mohamed*, 2020 WL 1545522, at *7 (similar).

To the extent conducting the depositions at a location like a U.S. embassy or consulate is infeasible and legitimate questions of admissibility arise, those issues could be addressed in a

motion *in limine* closer to trial.  *Fargesen*, 2022 WL 4110303, at *5.  Indeed, "whether the deposition testimony actually will be deemed material and admissible at trial" is an entirely separate matter on which the Court need not opine at this time.  *Vilar*, 568 F. Supp. 2d at 440 n.10 (alteration omitted) (quoting *United States v. Khan*, No. 06 Cr. 255 (DLI), 2008 WL 2323375, at *2 (E.D.N.Y. June 2, 2008)); *see Salim*, 855 F.2d at 952 ("The district court therefore may prefer to consider these problems after the deposition has been taken, when it can examine the transcript and the actual circumstances under which the deposition was conduction."); *Fargesen*, 2022 WL 4110303, at *5 (reserving judgment on admissibility for a later date); *Wey*, 2017 WL 237651, at *25 (same).  Here, assuming the depositions can in fact occur, the parties will have access to the recordings and transcripts of those depositions, and can raise any evidentiary concerns with the Court prior to the depositions being shown to the jury.  But for purposes of the instant motion, there are no countervailing factors substantial enough to militate against authorizing the depositions.  Accordingly, Rule 15's failure of justice factor is satisfied.

## IV.  Conclusion

For the reasons discussed, Defendant's motion pursuant to Rule 15 to conduct pretrial depositions of corporate representatives of CoinPayments and KOT4X is granted.  The Court orders video-recorded depositions "rather than CCTV testimony both because of the challenges of coordinating live testimony" and because of the possible need to rule on the admissibility of the witness testimony, as discussed above.  *Mohamed*, 2020 WL 1545522, at *8; *see also Fargesen*, 2022 WL 4110303, at *5.  The Court also orders that the depositions be recorded by video to allow for presentation to the jury in a manner that would replicate in-trial testimony.  The parties are directed to confer and work in good faith to identify appropriate next steps, including to arrange for the depositions to occur as soon as possible.  *See Fargesen*, 2022 WL 4110303, at *5.  While

not directing it to take any specific actions, the Court also asks the Government to consider utilizing MLATs or other processes for seeking international assistance that might expedite the necessary coordination with Lithuanian and Cypriot officials. *See McLellan*, 959 F.3d at 476. Finally, if for whatever reason video-recorded Rule 15 depositions prove unworkable, yet in-trial CCTV testimony might be, the parties should advise the Court.

    SO ORDERED.

Dated:  October 17, 2022
        New York, New York                    _____
                                                JOHN P. CRONAN
                                                United States District Judge