UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                    :
UNITED STATES OF AMERICA,                                           :
                                                                    :
                                                                    :
            -v-                                                     :        22 Cr. 326 (JPC)
                                                                    :
                                                                    :        OPINION AND
EDDY ALEXANDRE,                                                     :        ORDER
                                                                    :
                           Defendant.                               :
                                                                    :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

　　Before the Court is Defendant Eddy Alexandre's motion for, *inter alia*, (1) a finding that

the Commodity Futures Trading Commission ("CFTC"), which also investigated Defendant's

alleged fraud and initiated civil litigation against him, *see generally CFTC v. Alexandre*, No. 22

Civ. 3822 (VEC) (S.D.N.Y.), and the court-appointed Receiver in that litigation are part of the

prosecution team for the purposes of the Government's[1] discovery obligations; and (2) an order

compelling the Government to produce materials in response to certain discovery requests.  Dkt.

39 ¶¶ 1-2; Dkt. 70-1 ("Motion") at 12-26.[2]  After hearing oral argument on Defendant's Motion,

the Court ordered the Government and, if he chose, Defendant to submit an affidavit or affidavits

---

[1] Various federal entities are discussed in this Opinion and Order.  To avoid confusion, the
Court refers to those entities as follows.  The United States of America—the party that is
prosecuting Defendant—will be referred to as the "Government" or the "prosecutors."  Although
the CFTC is an agency of the United States government, the Court's references to the Government
herein do not include the CFTC.  The lead agency for the Government's criminal investigation of
Defendant is the Federal Bureau of Investigation ("FBI").

[2] "Dkt." citations refer to the docket before this Court, *United States v. Alexandre*, No. 22
Cr. 326 (JPC) (S.D.N.Y.).  "CFTC Dkt." citations refer to the docket in the civil action brought by
the CFTC against Defendant, currently pending before the Honorable Valerie E. Caproni, *CFTC
v. Alexandre*, No. 22 Civ. 3822 (VEC) (S.D.N.Y.).

setting forth additional facts concerning the Government's investigation of Defendant prior to initiating criminal proceedings.  *See United States v. Alexandre*, No 22 Cr. 326 (JPC), 2022 WL 16798756, at *4 (S.D.N.Y. Nov. 8, 2022).  Having reviewed those supplemental materials, the Court grants in part and denies in part Defendant's Motion.

## I.  Background[3]

### A.   The Alleged Fraud

From September 2021 to May 2022, Defendant operated EminiFX as an investment platform "through which investors would earn passive income through automated investments in cryptocurrency and foreign exchange . . . trading."  Complaint ¶ 5.  Defendant allegedly purported to conduct trading using "trade secret" technology, described as a "Robo-Advisor Assisted account," and guaranteed at least 5% weekly returns.  *Id.*  EminiFX received over $59 million in deposits from hundreds of individual investors.  *Id.* ¶ 19(b).

The Government alleges that, in actuality, EminiFX was a "massive Ponzi scheme."  Oct. 5, 2022 Oral Arg. Tr. at 38; *see also* Complaint ¶ 22.  According to the Government, each week,

---

[3] The background in this section is drawn primarily from the allegations in the Complaint, Dkt. 1 ("Complaint"); the Indictment, Dkt. 15 ("Indictment"); the filings in connection with Defendant's Motion including exhibits, Motion; Dkt. 41 ("First Bove Aff."); Dkt. 50 ("Opposition"); Dkt. 51 ("Reply"); statements made at the October 5, 2022 oral argument on Defendant's Motion, Dkt. 52 ("Oct. 5, 2022 Oral Arg. Tr."); and the supplemental affidavits submitted in response to the Court's November 8, 2022 Order, Dkt. 55, Exh. A ("Folly Aff."); Dkt. 55, Exh. B ("Strawman Aff."); Dkt. 56-1 ("Second Bove Aff.").  Because the Folly Affidavit reveals information about the Government's investigation to which Defendant is not entitled, the Court finds that the Folly Affidavit was properly submitted *ex parte* and under seal, with a partially redacted version filed on the public docket.  *See United States v. Gel Spice Co., Inc.*, 773 F.2d 427, 434 (2d Cir. 1985) (noting that the Federal Rules of Criminal Procedure permit both "an ex parte showing when a party seeks to prevent the inspection of documents that are alleged to be confidential" and "a court to excise privileged matters from inspection by the defendants").  For purposes of deciding the Motion, the Court will discuss limited sealed portions of the Folly Affidavit, as the probative value of doing so outweighs any prejudice to the Government.  *Accord United States v. Rhodes*, No. 18 Cr. 887 (JMF), 2019 WL 3162221, at *2 n.2 (S.D.N.Y. July 16, 2019).

the EminiFX website would falsely represent that investors were earning at least 5% returns. Complaint ¶¶ 5, 16.  But in truth, Defendant allegedly "failed to invest the vast majority of the investors' funds" he received, *id.* ¶ 6, and "sustained over $6 million in [undisclosed] losses on the limited portion of funds that he did invest," Opposition at 4; *see also* Complaint ¶ 19(d).   In addition, the Government alleges that Defendant pocketed approximately $14.7 million which he used for personal expenses such as a new BMW.  Complaint ¶¶ 6, 19(g)(i); Indictment ¶ 3(a); *see also* Opposition at 4.

## B.    The Civil and Criminal Investigations

The CFTC began investigating Defendant and EminiFX in March 2022.  Folly Aff. ¶ 4; Motion at 4.  As part of its investigation, the CFTC collected and reviewed documents from EminiFX, Defendant, and third-party entities such as the National Futures Association and TD Bank, where EminiFX maintained a bank account, to identify potential investor assets.  CFTC Dkt. 18 ¶¶ 5, 22; *see also* Folly Aff. ¶¶ 9(a), (e).  The CFTC also recorded an April 28, 2022 EminiFX investor meeting, which Defendant led.  *See* Folly Aff. ¶ 9(e); CFTC Dkt. 18 ¶ 5(f); Complaint ¶ 13.

The FBI began separately investigating Defendant as well in March 2022.  Motion at 4; Folly Aff. ¶ 5; *accord id.* ¶ 3(a).  As part of its investigation, the FBI, among other things, conducted surveillance of the EminiFX office on or about March 22, 2022.  Complaint ¶ 18; Motion at 4.  The Government then formally opened an investigation into Defendant on or about April 6, 2022, and assigned an Assistant U.S. Attorney to the matter on or about May 4, 2022. Folly Aff. ¶¶ 6-7.  According to the Government's affidavit, the FBI and the CFTC only became aware of the other's investigation on or about April 25, 2022—over a month after each investigation was initiated.  *Id.* ¶ 8.

After learning of the CFTC's investigation, the Government requested and was granted access to the CFTC's investigative files including the various financial records that the CFTC had already collected as well as the CFTC's recording of the EminiFX investor meeting. *Id.* ¶ 9(b), (e). The Government and the CFTC also began coordinating to ensure that one's investigative actions would not compromise the other's. This entailed the Government and the CFTC communicating about the timing of Defendant's arrest, the timing of the search of EminiFX's office, and the timing of the CFTC's request to freeze Defendant's assets. *Id.* ¶¶ 9-10. Otherwise, the Government and the CFTC appear to have proceeded separately in their respective investigations. The Government and/or the FBI and the CFTC did not conduct any joint interviews, the Government did not designate anyone from the CFTC as a special Assistant U.S. Attorney, the CFTC played no role in presenting the case to the grand jury, the CFTC did not participate in the execution of search warrants or responsiveness reviews, the Government did not share any materials obtained pursuant to grand jury subpoenas with the CFTC, the Government did not direct the CFTC to take any investigative actions or vice versa, and the two entities were not involved in each other's charging decisions. *Id.* ¶ 3.

## C.  The CFTC Litigation

On May 10, 2022, the CFTC filed under seal a civil complaint against Defendant and EminiFX, alleging several violations of the Commodity Exchange Act. CFTC Dkts. 1, 5 ¶¶ 39-79. The CFTC also moved for a statutory restraining order freezing Defendant's assets and for the appointment of a Receiver to take control of EminiFX and recover EminiFX investor funds. CFTC Dkts. 6-8. Judge Caproni granted those requests. CFTC Dkt. 9.

On July 25, 2022, after the parties had exchanged some discovery, *see* Motion at 9, the Government moved to intervene in the CFTC litigation and for a stay. CFTC Dkt. 73. Before

doing so, the Government informed both the CFTC and the Receiver of its intent to seek a stay. Folly Aff. ¶¶ 14(b), 15(c).  The CFTC indicated that it would not oppose the Government's request and agreed to provide the Government with certain of Defendants' discovery requests to assist the Government's evaluation of its stay application.  *Id.* ¶ 14(b).  Similarly, the Receiver indicated that he would not oppose the Government's request for a stay provided that he could continue working to recover EminiFX investor assets.  *Id.* ¶ 15(c).  Judge Caproni granted the Government's request to stay discovery in the CFTC case on September 2, 2022.  CFTC Dkt. 160.

### D.    Defendant's Arrest and the Search of EminiFX

On May 11, 2022, the Government obtained an arrest warrant for Defendant based on the commodities fraud and wire fraud charges in a sealed Complaint filed the same day.  *See* Strawman Aff. ¶ 7; Dkt. 2.  Defendant was arrested at approximately 6:00 a.m. the following day.  Strawman Aff. ¶ 8.  The Government obtained a search warrant for an iPhone seized from Defendant at the time of his arrest.  *See* Dkt. 64-2 ("Cell Phone SW Aff.").

The FBI informed the Receiver of its plan to arrest Defendant the day before, and the Receiver "indicated that the Receiver planned to go to Alexandre's house on the day of the arrest to identify assets that the Receiver was authorized by [Judge Caproni] to seize."  Strawman Aff. ¶ 8.  The FBI made clear to the Receiver that he could not be present during Defendant's arrest and notified the Receiver after the arrest had taken place.  *Id.*  Defendant was presented before the Honorable Katherine H. Parker on the day of his arrest.  Dkt. 3.  While CFTC personnel attended the presentment in order to serve Defendant with legal process connected to the CFTC litigation, Folly Aff. ¶ 12, the CFTC did not join the Government at counsel table, Dkt. 4 at 3; Opposition at 9, 15-16, and has not attended any subsequent criminal proceedings, Folly Aff. ¶ 12.  Additionally,

the Government and the CFTC issued separate press releases in which they thanked each other for their investigative assistance.  First Bove Aff., Exhs. D, E.

The Government also obtained a warrant to search EminiFX's office.  *See* Dkt. 64-1 ("Office SW Aff.").  The search of the office commenced the morning of Thursday, May 12, 2022.  Strawman Aff. ¶ 11; Motion at 5.  Pursuant to the warrant, the FBI seized approximately fifty-seven electronic devices as well as hard copy documents.  Dkt. 37 at 1; Motion at 6.  The FBI also interviewed certain EminiFX employees who arrived at the office that morning as the search was occurring.  Strawman Aff. ¶ 14.

CFTC personnel and the Receiver were present at the EminiFX office at the time of the FBI search.  The FBI understood that the Receiver "was authorized by [Judge Caproni] to take control of the EminiFX office," and learned that the Receiver intended to do so upon the completion of the FBI's search.  *Id.* ¶ 10.  After FBI personnel conducted a "safety sweep" of the entire premises, FBI agents searched the first room in the office complex.  *Id.* ¶ 11.  Once the search of the first room was completed, the FBI informed the Receiver and CFTC personnel that they could wait in that room while the FBI searched the remaining rooms.  *Id.*  When, at one point, the Receiver's staff attempted to leave the designated room, the FBI stopped them and instructed them not to enter certain areas still being searched.  *Id.* ¶ 13.  There is no indication that either the CFTC or the Receiver participated in the office search in any way: they were not involved in the FBI's decisions concerning which areas to search or which items to seize, nor did they participate in the FBI's interviews of EminiFX employees.  *Id.* ¶¶ 12, 14.

**E.    Procedural History**

On June 9, 2022, a grand jury in this District returned an indictment charging Defendant with one count of commodities fraud, in violation of 7 U.S.C. §§ 9(1) and 13(a)(5), 17 C.F.R.

§ 180.1, and 18 U.S.C. § 2, and one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Indictment ¶¶ 1-2.  Since then, the Government has made at least eleven discovery productions, totaling approximately 1,335,554 pages.  Second Bove Aff. ¶¶ 1(a), (b).  Many of these documents appear to have been obtained either from the CFTC or the Receiver.  *Id.* ¶¶ 1(c), (d); *see also* Folly Aff. ¶ 15(a) (noting that the Government served subpoenas on the Receiver).  The Government also produced in discovery excerpts and summaries of interviews of several EminiFX employees and investors.  First Bove Aff., Exh. M ("July 28, 2022 Letter").[4]  Lastly, the Government reviewed and produced to Defendant the contents of the fifty-seven electronic devices seized during the search of EminiFX's office.  Dkt. 69-1 at 1.

On August 29, 2022, Defendant filed the Motion seeking, *inter alia*, (1) "a finding that the CFTC and the Receiver are part of the prosecution team for purposes of the prosecutors' discovery obligations"; and (2) an order "compel[ling] additional disclosures by the prosecutors pursuant to *Brady* and Rule 16(a)1)(E)(i)."  Motion at 1.[5]  The Government filed its Opposition on September 16, 2022, and Defendant filed his Reply on September 23, 2022.  After holding oral argument, the Court ordered the Government to submit an affidavit or affidavits "describing with specificity the nature and extent of the prosecutors' and the FBI's relationship with [the] CFTC and the Receiver

---

[4] Defendant filed Exhibit M under seal "temporarily, in order to give the prosecutors an opportunity to seek further sealing based on considerations that Mr. Alexandre is not in a position to evaluate."  Motion at 22 n.4.  The Government argues "[a]lthough Exhibit M does not contain the names of the witnesses who made the statements, it is possible that members of the public could ascertain the identity of some or all of the witnesses based on their statements in Exhibit M."  Dkt. 69 at 1.  The Government therefore requests the exhibit be maintained under seal to protect their identities.  *Id.* at 1-2.  Given the privacy interests of the individuals mentioned in that letter, the Court will keep the letter under seal, but will refer to excerpts of the letter in this Opinion and Order as necessary to resolve Defendant's Motion.

[5] Defendant also moved for an order authorizing him to conduct pretrial depositions pursuant to Federal Rule of Criminal Procedure 15(a), Motion at 1, which the Court previously granted in a separate Opinion and Order, *see United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2022 WL 9843495 (S.D.N.Y. Oct. 17, 2022).

during their investigations of Defendant," and further permitted Defendant to submit such an affidavit or affidavits.  *Alexandre*, 2022 WL 16798756, at *4.  The parties submitted those materials on November 18, 2022 and November 23, 2022.

## II.  Joint Prosecution Motion

Defendant argues that the Government conducted a joint investigation with the CFTC and with the Receiver such that both must be regarded as part of the prosecution team for the purposes of the Government's obligation to review for and produce exculpatory evidence.  *See* Motion at 12-18; Reply at 1-8; Dkt. 56.  He therefore asks the Court to make such a finding so that the Government's discovery obligations extend to the CFTC and the Receiver.  Motion at 1.

## A.    Applicable Law

In *Brady v. Maryland*, the Supreme Court recognized that due process requires the Government to disclose all exculpatory evidence to the defense.  373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment . . . .").  However, this obligation "extends only to material evidence . . . that is *known to the prosecutor*."  *United States v. Hunter*, 32 F.4th 22, 35 (2d Cir. 2022) (emphasis and alteration in original) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998)).  The Government, therefore, is "presumed . . . to have knowledge of all information gathered in connection with [its] investigation of the case," *Avellino*, 126 F.3d at 255, which imposes "a duty to learn of any favorable evidence known to the others acting on [its] behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

That said, "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor."

*Avellino*, 126 F.3d at 255.  Indeed, "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [the adoption of] a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *Id.* (internal quotation marks omitted). Thus, in setting the parameters of a prosecution team, the Court must "examine the specific circumstances of the person alleged to be an arm of the prosecutor." *Hunter*, 32 F.4th at 35 (alterations, internal quotation marks, and citations omitted).  To determine whether a person is a member of the prosecution team, "the relevant inquiry is what the person did, not who the person is.'" *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) (emphasis omitted); *accord United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013) ("Whether someone is part of the prosecution team depends on the level of interaction between the prosecutor and the agency or individual.").

Whether the Government's discovery obligations extend to materials in possession of another government agency turns on whether the Government and the other agency conducted a "joint investigation." *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014); *see also United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012) ("Where the [U.S. Attorney's Office] conducts a 'joint investigation' with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence.").  To determine whether a joint investigation occurred, courts conduct a "fact-specific inquiry that is best approached on a case-by-case basis" to analyze the "degree of cooperation between agencies." *United States v. Ferguson*, 478 F. Supp. 2d 220, 238 (D. Conn. 2007) (citing *United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979)); *accord Martoma*, 990 F. Supp. 2d at 461.  Relevant factors include the extent to which the other

9

agency "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018); *see also United States v. Velissaris*, No. 22 Cr. 105 (DLC), 2022 WL 2392360, at *2 (S.D.N.Y. July 3, 2022) (same); *United States v. Collins*, 409 F. Supp. 3d 228, 239 (S.D.N.Y. 2019) (same).

## B.     Discussion

To support his argument that the CFTC should be regarded as part of the prosecution team, Defendant points to the facts that the CFTC and the Government "acted in lockstep" by filing their complaints on the same day, Reply at 2; *accord* Motion at 14; that the CFTC granted the Government access to the documents obtained during its investigation, with the Government even explicitly relying on a CFTC-recorded video in the Complaint, Motion at 14; *see also* Dkt. 56 at 1-2; Complaint ¶ 13; that the CFTC attended Defendant's criminal presentment, Motion at 14; that the two agencies issued press releases on the same day, in which they thanked each other, *id.* at 14-15; First Bove Aff., Exhs. D, E; that the CFTC was present during the FBI's search of EminiFX's office, Motion at 15; and that the Government sought, and the CFTC did not oppose, a stay of the civil action, *id.* at 16-17.

As to the Receiver, Defendant asserts that the Government and the Receiver "adopted a divide-and-conquer approach to the search" of EminiFX's office, whereby "[t]he FBI left behind a huge volume of data at EminiFX" which the "Receiver collected . . . and turned . . . over to the prosecutors for use in this case." Reply at 3. In addition, the Government subpoenaed a large number of documents from the Receiver, Dkt. 56 at 2, and obtained consent from the Receiver to

continue its review of electronic devices seized from EminiFX, Reply at 4. Finally, Defendant notes that the Government has suggested that it may call the Receiver as a witness at trial to testify about his review of EminiFX's electronic data. *See* Oct. 5, 2022 Oral Arg. Tr. at 4.

The facts do not indicate that either the CFTC or the Receiver conducted a joint investigation with the Government such that either could be properly considered part of the prosecution team. Starting from the beginning, the CFTC and the Government initiated their investigations entirely separately and without each other's knowledge. Folly Aff. ¶ 3(a). The two agencies only became aware of the other's investigations several weeks after they were initiated. *Id.* ¶ 8. Sworn statements from one of the prosecutors reflect that after becoming aware of the existence of each other's investigations, any coordination between the Government and the CFTC was focused on avoiding any steps that might compromise or frustrate the work of the other agency or otherwise adversely impact the recovery of funds for victims. *See id.* ¶¶ 9-10.

For example, while Defendant is correct that the Government initiated the criminal prosecution and the CFTC initiated the civil litigation on the same day, this appears to have been deliberate and entirely understandable. The Government explains its concern that if the CFTC initiated litigation accusing Defendant of commodities fraud before his arrest, it could have prompted him to flee or destroy evidence. Opposition at 15; Folly Aff. ¶¶ 9(b)-(d), 10. Similarly, if Defendant had been arrested before a freezing order and the appointment of the Receiver, there would have been the risk of dissipation of investor funds. Opposition at 15; Folly Aff. ¶ 10; *see also Middendorf*, 2018 WL 3956494, at *5 (finding no joint investigation notwithstanding the Government and the Securities and Exchange Commission ("SEC") "filed charges against the same group of defendants, *on the same day*" (emphasis added)).

Defendant maintains, however, that the coordination went beyond avoidance of stepping on each other's toes, pointing to the large volume of documents that the CFTC and the Receiver have shared with the Government.  Dkt. 56; Second Bove Aff. ¶ 1.  In fact, defense counsel estimates that roughly 99% of all documents produced by the Government to Defendant thus far have come from either the CFTC or the Receiver.  Dkt. 56 at 1; Second Bove Aff. ¶ 1.  But these "access grants" between governmental agencies, which are hardly uncommon, do not indicate by themselves a joint investigation, particularly given the Government's representation that it did not direct the CFTC or the Receiver to take any investigative actions, Folly Aff. ¶ 3(k).  *See, e.g.*, *Velissaris*, 2022 WL 2392360, at *3 (finding no joint investigation even though the Government relied "extensively on the SEC's evidence" since that evidence was not gathered at the Government's direction); *Collins*, 409 F. Supp. 3d at 242 (finding no joint investigation despite "the SEC shar[ing] some documents it obtained using subpoenas" with the Government); *United States v. Blaszczak*, 308 F. Supp. 3d 736, 738 (S.D.N.Y. 2018) (finding no joint investigation even though "[t]he SEC provided the [U.S. Attorney's Office] with all the documents it obtained during its investigation"); *United States v. Connolly*, No. 16 Cr. 370 (CM), 2017 WL 945934, at *7 (S.D.N.Y. Mar. 2, 2017) ("The fact that the Government obtained documents that had already been produced to the CFTC does not convert its fact-finding into joint fact-finding."); *cf. United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004) ("[T]here is no general rule preventing the [CFTC]'s sharing of evidence acquired through civil discovery with criminal prosecutors.").  This is especially true where, as here, the information sharing largely flowed only in one direction:  with a few limited exceptions, Folly Aff. ¶¶ 16(a), (b),[6] the CFTC and the Receiver "did not review

_____

[6] The FBI shared a copy of a surveillance report pertaining to EminiFX's office, emails that had been received from two individuals that had provided information to the FBI, and (with

documents gathered only by the prosecution," *Blaszczak*, 308 F. Supp. 3d at 742, and the CFTC and the Receiver did not review documents produced pursuant to grand jury subpoenas or the Government's notes from witness interviews, Folly Aff. ¶¶ 16(c), (d). *See Collins*, 409 F. Supp. 3d at 242 ("[A]lthough the SEC shared some documents it obtained using subpoenas, the [U.S. Attorney's Office] did not share any documents it obtained using grand jury subpoenas with the SEC . . . ."); *Middendorf*, 2018 WL 3956494, at *5 (finding no joint investigation in part because "the SEC . . . has not reviewed documents gathered by the Government"). Similarly, "[t]he mere fact that the Government may have requested and received documents from the [Receiver] in the course of its investigation does not convert the investigation into a joint one." *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006); *cf. id.* (finding no joint investigation between the Government and the New York Stock Exchange ("NYSE") in part because "the proposition that the NYSE is a government agency is dubious at best").

None of the remaining facts to which Defendant points tips the scale. Defendant argues that the CFTC "accompanied the prosecution to court proceedings" when it "used Mr. Alexandre's criminal presentment as an occasion to effect service for purposes of its case." Motion at 14. The CFTC, however, did not "accompany[y]" the Government in the manner mentioned in *Middendorf*, 2018 WL 3956494, at *4. CFTC attorneys merely sat in the gallery rather than joining the prosecutors at counsel's table, and the purpose of their attendance—to serve Defendant with process related to the civil action—had nothing to do with furthering the criminal case. Folly Aff. ¶ 12; Dkt. 4 at 3:6-8 (omitting any mention of CFTC personnel in Government counsel's initial appearance for the record at Defendant's presentment). Moreover, "[t]he CFTC has not attended

the CFTC) a suspicious activity report number that was requested by the CFTC. Folly Aff. ¶¶ 16(a), (b).

any other Court proceedings in this case." Folly Aff. ¶ 12.  Nor is the fact that the U.S. Attorney's Office and the CFTC thanked each other in their press releases a basis for finding a joint investigation.  *See, e.g.*, *Connolly*, 2017 WL 945934, at *8 (finding no joint investigation between the Government and the New York State Department of Financial Services even though the latter issued a press release "in which the agency expressed its appreciation to the Government . . . for their 'work and cooperation'" related to the investigation).

The CFTC's and the Receiver's presence during the FBI's search of EminiFX's office is unconvincing as well.  Personnel with the CFTC and the Receiver remained in an already-searched room while the FBI completed its search of the office, and were prevented from leaving the room until the FBI finished.  Strawman Aff. ¶¶ 11-13.  There is no evidence to suggest, as Defendant contends, that the FBI and the Receiver adopted a "divide-and-conquer" approach by which the FBI took or left evidence at the direction of the CFTC or the Receiver, knowing that the Receiver would later obtain them.  *See id.* ¶ 12.  Furthermore, the FBI and the Receiver each conducted separate interviews of the employees who happened to show up at the office while the search was taking place.  *Id.* ¶ 14.  Thus, it cannot be said that the CFTC or Receiver actively participated in the FBI's search of EminiFX.  In fact, the presence of the Receiver and his team was entirely appropriate given that he was authorized by Judge Caproni to take control of EminiFX immediately following the Government's search.  *Id.* ¶ 10.

Nor does the Government's request to stay discovery in the CFTC's civil case, without opposition from the CFTC or the Receiver, evince a joint investigation.  Such stays are common when the subject matter of a pending criminal prosecution overlaps with that of a civil litigation.  *See Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004) ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same

subject matter." (quoting *Johnson v. N.Y.C. Police Dep't*, No. 01 Civ. 6570 (RCC) (JCF), 2003 WL 21664882, at *2 (S.D.N.Y. July 16, 2003))); *cf. United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution, sometimes at the request of the defense." (citations omitted)); *United States v. ATP Oil & Gas Corp.*, Civil Action No. 13-0262, 2013 WL 6184991, at *3 (E.D. La. Nov. 26, 2013) ("Federal district courts are empowered to stay civil proceedings pending the completion of parallel criminal prosecutions, even when the request for a stay is made by the prosecution.").  Indeed, the stay of an action brought by a civil enforcement agency, while the criminal prosecution proceeds, is arguably consistent with that agency not being part of the prosecution team.  *See Velissaris*, 2022 WL 2392360, at *2 ("Although both the SEC and the USAO have launched investigations against [the defendant], the SEC is not part of the 'prosecution team.' . . . Indeed, the SEC's civil action against the defendant is stayed.").  And the fact that the Government may call the Receiver as a witness at trial cannot form the basis of a joint investigation when, as here, "[h]e never participated in formulating trial strategy, nor was he directed to investigate."  *Meregildo*, 920 F. Supp. 2d at 445 (S.D.N.Y. 2013) (finding a cooperating witness was not part of the prosecution team).

Several other factors militate against finding the existence of a joint investigation.  First, neither the CFTC nor the Receiver was involved in the Government's presentation of evidence to the grand jury.  Folly Aff. ¶ 3(f); *see Velissaris*, 2022 WL 2392360, at *2; *Collins*, 409 F. Supp. 3d at 242; *Middendorf*, 2018 WL 3956494, at *5; *Blaszczak*, 308 F. Supp. 3d at 742.  Second, as previously noted, the Government did not share documents obtained from the grand jury with the CFTC or the Receiver.  Folly Aff. ¶ 3(h); *see Collins*, 409 F. Supp. 3d at 242; *Middendorf*, 2018

WL 3956494, at *5; *Blaszczak*, 308 F. Supp. 3d at 742.  Third, no one working for either the Receiver or CFTC was involved in developing the prosecution strategy, played a role in the Government's charging decisions, or has been designated a special Assistant U.S. Attorney.  Folly Aff. ¶¶ 3(d), (e); *Velissaris*, 2022 WL 2392360, at *2; *Collins*, 409 F. Supp. 3d at 242; *Middendorf*, 2018 WL 3956494, at *5; *Blaszczak*, 308 F. Supp. 3d at 742; *Meregildo*, 920 F. Supp. 2d at 445. In fact, the bulk of the Government's communications with the CFTC and the Receiver appear to have been limited to coordinating "their respective strategies over the course of the parallel investigations" so that neither disrupted the other.  *Collins*, 409 F. Supp. 3d at 242 (internal quotation marks and alterations omitted) (finding no joint investigation despite such coordination); *accord* Folly Aff. ¶¶ 3(j), (k).  Fourth, as previously mentioned, apart from the CFTC serving Defendant at his criminal presentment, neither the CFTC nor the Receiver has accompanied the Government to or even attended court proceedings in the criminal case.  Folly Aff. ¶ 12; *see Blaszczak*, 308 F. Supp. 3d at 742.  And fifth, the Government did not conduct any joint interviews with the CFTC or the Receiver.[7]  Folly Aff. ¶ 3(c); *see Connolly*, 2017 WL 945934, at *7 (finding no joint investigation in part due to the lack of joint witness interviews); *cf. Collins*, 409 F. Supp.

---

[7] Certain decisions out of this District where the court found a joint investigation, which are cited by Defendant, *see* Motion at 13-14, are distinguishable on this fifth factor alone.  In *Gupta*, the Honorable Jed S. Rakoff found that the SEC and the Government engaged in a joint investigation primarily because the SEC conducted forty-four interviews jointly with the Government and only two on its own.  848 F. Supp. 2d at 495 ("[W]here, as here, the overwhelming bulk of witness interviews were jointly conducted, there can be no doubt that exculpatory disclosures made during these joint interviews that are reflected in the notes or memoranda of either agency must be disclosed to the defense.").  And the relief granted in *Gupta* was limited to review for and disclosure of *Brady* material in memoranda relating to those forty-four interviews.  *Id.* at 497.  Similarly, in *Martoma*, the Honorable Paul G. Gardephe found the existence of a joint investigation in part because "the SEC and the [United States Attorney's Office] jointly conducted twenty interviews of twelve witnesses" and "coordinated their efforts in conducting depositions of [the defendant's employer] and its employees."  990 F. Supp. 2d at 460-61.

3d at 242 (finding no joint investigation when the Government and the SEC "both participated in only 16 of 60 interviews, and the SEC did not take notes during the interviews and does not have any notes from the interviews"); *Blaszczak*, 308 F. Supp. 3d at 738 (finding no joint investigation despite the Government and the SEC conducting thirty-nine joint witness interviews).[8]

Finally, the Court finds reassuring that "the Government has [voluntarily] agreed to request and review CFTC witness interview notes for material that would be subject to disclosure were it in the Government's possession."  Opposition at 11; *see also Velissaris*, 2022 WL 2392360, at *2 ("It is noteworthy that Government . . . has agreed to provide the notes and memoranda of interviews conducted by the SEC without the Government's involvement at the time it produces 3500 material.").

Accordingly, the Court does not find the existence of a joint investigation.  As such, Defendant's request for a finding that the CFTC and the Receiver "are part of the prosecution team in this case for purposes of the prosecutors' discovery obligations," Dkt. 39, is denied.

### III.  Motion to Compel Discovery

Turning to his motion to compel, Defendant seeks an order compelling a response to several discovery requests which he served on the Government on August 16, 2022.  Motion at

---

[8] Defendant argues that "[i]n some cases, the *Middendorf* factors 'don't fit so well' as a means of assessing the scope of the prosecution team."  Reply at 6.  In support of this contention, Defendant cites the Honorable P. Kevin Castel's oral ruling in *United States v. Griffith*, where Judge Castel required the Government to conduct a *Brady* review of case-related communications from the Office of Foreign Assets Control ("OFAC").  *See* Tr. at 39:10-13, *United States v. Griffith*, No. 20 Cr. 15 (PKC) (S.D.N.Y. Dec. 22, 2020), ECF No. 82.  Yet, Judge Castel observed in *Griffith* that "the *Middendorf* factors . . . really fit when you are talking about an agency like the SEC," although he found them not to "fit so well" on the facts before him involving OFAC.  *Id.* The CFTC is far closer to the SEC than to OFAC.  The facts in *Middendorf*, which also involved a parallel investigation over an alleged financial fraud, *see United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3443117, at *1-2 (S.D.N.Y. July 17, 2018), are not materially distinguishable from those of this case, and the Court views the *Middendorf* factors as providing an appropriate framework for assessing Defendant's joint investigation arguments.

18-26; *see* First Bove Aff., Exh. L ("Requests").  He seeks (1) "all communications between the CFTC and the Department of Justice, including the U.S. Attorney's Office for the Southern District of New York and the FBI" regarding various topics, Requests ¶ 6; (2) communications between the CFTC and Defendant, EminiFX, or certain third-party financial entities, as well as internal communications of the CFTC, on particular topics, *id.* ¶ 7; (3) the disclosure of "any documents or communications by the DOJ, the CFTC or the Receiver, and other materials . . . relating to CoinPayments and purchases of real estate by Mr. Alexandre or EminiFX" for the period of September 1, 2021 through May 12, 2022, *id.* ¶ 11; (4) "the identities and contact information" of the witnesses in the Government's July 28, 2022 Letter, *id.* ¶ 12; (5) notice pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B) "of any pieces of evidence that were obtained from [various electronic] sources and that the government intends to offer in its case-in-chief at trial," *id.* ¶ 5; and (6) certain information related to the timing of forensic imaging of electronic devices seized pursuant to search warrants in this case, *id.* ¶ 8(a).[9]

## A.  Applicable Law

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) requires the Government to disclose, upon a defendant's request, items "within the government's possession, custody, or control" that are "material to preparing the defense."  *See also United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) (describing Rule 16 as an "anti-withholding provision" (quoting *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir. 1977)).  "An item is 'material to preparing the defense' under Rule 16 'if it could be used to counter the Government's case or bolster a defense.'"  *United*

---

[9] While Defendant also previously had sought to compel production of "reports relating to the manner in which the prosecution team seized and collected certain pieces of evidence" during its surveillance of EminiFX, Motion at 24; *see* Requests ¶ 4, he since has abandoned any "further disclosures on this issue at this time," Reply at 9 n.8.  Accordingly, this portion of Defendant's Motion is denied without prejudice as moot.

States v. Urena, 989 F. Supp. 2d 253, 258 (S.D.N.Y. 2013) (quoting United States v. Stevens, 985
F.2d 1175, 1180-81 (2d Cir. 1993)); cf. United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991)
("Materiality means more than the evidence in question bears some abstract logical relationship to
the issues in the case.  There must be some indication that the pretrial disclosure of the disputed
evidence would have enabled the defendant significantly to alter the quantum of proof in his
favor." (quoting United States v. Ross, 511 F.2d 757, 762-63 (5th Cir. 1975))).  A defendant bears
the burden to "make a prima facie showing that information sought is material."  United States v.
Messalas, No. 17 Cr. 339 (RRM), 2020 WL 1666162, at *10 (E.D.N.Y. Apr. 4, 2020); see also
United States v. Rigas, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003) (similar).  To do so, "a defendant
must offer more than the conclusory allegation that the requested evidence is material."  Rigas,
258 F. Supp. 2d at 307 (internal quotation marks omitted).

      Where a defendant's theory of materiality is that the evidence is relevant to anticipated
motion practice (or necessary to assess the viability of an anticipated motion), courts typically
require some threshold showing that the anticipated motion has merit.  See, e.g., United States v.
Berrios, 501 F.2d 1207, 1211-12 (2d Cir. 1974) (denying a motion for discovery in support of a
selective prosecution defense because, "[u]pon the meagre preliminary showing made here, we
doubt whether we would have granted a hearing or ordered the production of evidence for such a
hearing, since [the defendant] appears frankly to have embarked upon a fishing expedition");
Messalas, 2020 WL 1666162, at *11 ("[D]iscovery requests seeking to support a Franks challenge
should be denied where a defendant has failed to make the preliminary showing necessary for a
Franks hearing."); Rhodes, 2019 WL 3162221, at *4 ("[W]hether [a defendant] is entitled to
further discovery" to assess whether a dual investigation infringed on the defendant's due process
rights "turns on whether he has made a substantial preliminary showing of bad faith").  Moreover,

the defendant must adequately explain how the discovery sought is relevant to the allegations underpinning his purported motion.  *See Berrios*, 501 F.2d at 1211-12 ("In order to show . . . a colorable basis entitling the defense to subpoena documentary evidence required to establish a selective prosecution defense, we would first require some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements." (citation and internal quotation marks omitted)); *Messalas*, 2020 WL 1666162, at *10 (denying request for discovery related to motion practice challenging the Government's email search protocol in the absence of authority that the Government's search, as alleged, would have violated the defendant's Fourth Amendment rights).

**B.    Discussion**

**1.    Communications Between the Government and the CFTC**

Defendant seeks the production of "all communications between the CFTC and the Department of Justice, including the U.S. Attorney's Office for the Southern District of New York and the FBI" regarding fifteen topics relating to the Government's and the CFTC's investigations and initiation of litigation.  Request ¶ 6.  Defendant argues that this information is material to a motion under *Kordel* and *United States v. LaSalle National Bank*, 437 U.S. 298 (1978), in which he would argue that the Government and the CFTC violated his due process rights by engaging in improper cooperation in their investigation of his conduct.  Motion at 19.

As suggested earlier in this Opinion and Order, it is of course well-settled that criminal and civil authorities may conduct simultaneous investigations of the same matter, and further may cooperate with each other and share information when doing so.  *See, e.g.*, *Rhodes*, 2019 WL 3162221, at *1, 3; *see also Fiore*, 381 F. 3d at 94 ("Where federal administrative and prosecutorial jurisdiction overlap, subsequent criminal investigations are often inseparable from prior civil investigations.").  The Fifth Amendment's Due Process Clause, however, imposes constitutional

limitations on such cooperation, *see Rhodes*, 2019 WL 3162221, at *1, 3.  For example, a due process violation may occur if a civil action were brought solely for the purpose of obtaining evidence for a criminal proceeding.  *Kordel*, 397 U.S. at 11-12; *see also Rhodes*, 2019 WL 3162221, at *3.

In such a situation, the Government may be obligated to disclose pursuant to Rule 16(a)(1)(E)(i) materials relevant to the coordination between the two investigating agencies so that the defendant may assess whether "the dual investigations infringed his due process rights." *Rhodes*, 2019 WL 3162221, at *3.  However, "a defendant must 'make a *substantial preliminary showing* of bad faith before an evidentiary hearing or even limited discovery'" to support a due process motion may occur.  *Id.* at *4 (emphasis added) (quoting *Gel Spice*, 773 F.2d at 434).  In articulating this standard in *Rhodes*, the Honorable Jesse M. Furman followed the Second Circuit's decision in *Gel Spice*, which concluded that the defendant was required to make a substantial preliminary showing that the prosecutors had used a civil administrative proceeding in bad faith to obtain evidence for a criminal prosecution, before being entitled to an evidentiary hearing or limited discovery, *Gel Spice*, 773 F.2d at 434.

As discussed *supra* and in a prior Order in this case, *see Alexandre*, 2022 WL 16798756, at *2-3, Defendant points to several circumstances that, he argues, obligate additional discovery from the Government to support his anticipated due process motion under *Kordel* and *LaSalle National Bank*.  Given these contentions, and the prior absence of a sworn statement from the Government, the Court ordered further development of the factual record in the form of an affidavit or affidavits from the Government "describing with specificity the nature and extent of the prosecutors' and the FBI's relationship with the CFTC and the Receiver during their investigations of Defendant," as well as any affidavit or affidavits Defendant wished to submit.  *Id.* at *4; *see*

*also id.* at *3 ("[A]s Judge Furman noted in *Rhodes*, the Second Circuit in *Gel Spice* applied the substantial preliminary showing standard 'only *after* the agency had provided declarations explaining the circumstances of the investigation and internal documents for an in camera review.'" (brackets omitted) (quoting *Rhodes*, 2019 WL 3162221, at *4)).

Having now reviewed the more developed factual record with affidavits from one of the prosecutors, an FBI agent previously assigned to this case, and defense counsel, the Court concludes that Defendant has failed to make "a substantial preliminary showing of bad faith" such as "a substantial preliminary showing that the [CFTC] conducted the civil investigation 'solely' to assist the criminal one." *Rhodes*, 2019 WL 3162221, at *4 (quoting *Kordel*, 397 U.S. at 11-12). The prosecutor's affidavit makes clear that any cooperation between the Government and the CFTC was limited to ensuring that each's investigative actions were not compromising the other's. *See supra* II.B. While true that the Government requested and received access to the fruits of the CFTC's investigation, "there is no general rule preventing the [CFTC]'s sharing of evidence acquired through civil discovery with criminal prosecutors," *Fiore*, 381 F.3d at 94, and such sharing alone is not indicative of bad faith. *See also, e.g.*, *Rhodes*, 2019 WL 3162221, at *2 (denying request for discovery in support of an anticipated *Kordel* motion even though "the Complaint quotes from text messages produced by [the defendant] to the SEC" (ellipsis, brackets, and internal quotation marks omitted)).

Nor for that matter has there been a substantial preliminary showing of improper coordination between the Government and the Receiver, who was appointed at the CFTC's behest. The Government completed its preliminary investigation and made its decision to bring criminal charges against Defendant before the Receiver was appointed. The Court has already concluded that there has been no showing that the Receiver and the Government adopted a "divide-and-

conquer" approach to the materials seized at EminiFX's office.  *See supra* II.B.  FBI Special Agent Joseph Strawman, who was formerly assigned to the investigation, averred that "the Receiver did not participate in the FBI's Search," "[t]he FBI did not take direction from . . . the Receiver on how it should conduct its search," and "the FBI did not take or leave any piece of evidence at the direction of . . . the Receiver."  Strawman Aff. ¶ 12.  The Receiver was present during the search for the independent purpose of taking control of EminiFX following the FBI's departure, as authorized by Judge Caproni.  *Id.* ¶ 10.  Moreover, that the Government subpoenaed documents from the Receiver and obtained the Receiver's consent to review electronic data collected from its search of EminiFX does not indicate improper coordination for the purposes of a *Kordel* motion. *See supra* II.B.

The Court also notes the meaningful similarities between this case and *Rhodes*.  For example, as in *Rhodes*, the Government here "did not direct the CFTC and/or the Receiver to take any investigative actions."  Folly Aff. ¶ 3(k); *cf. Rhodes*, 2019 WL 3162221, at *5 ("First, and most crucially, [the prosecutor] has now declared, under penalty of perjury, that neither he, nor any other member of the criminal prosecution team, directed or requested the issuance of the SEC subpoena.").   "By itself, that unambiguous statement refutes any suggestion that the [CFTC] . . . gathered documents [or took other investigative actions] . . . solely (or even partly) to further the criminal investigation."  *Rhodes*, 2019 WL 3162221, at *5.  Additionally, as in *Rhodes*, the CFTC "did not immediately funnel to the [Government] evidence it obtained with respect to [Defendant], as one would expect if the [CFTC were] simply doing the [Government]'s bidding. Instead, the [CFTC] transmitted information only when requested by the [Government] . . . ."  *Id.* at *5; *accord* Folly Aff. ¶¶ 9(b), (e), 14(c).

This case also presents an important distinction from *Rhodes*: in *Rhodes*, the SEC conducted a two-plus-year investigation of the defendant's alleged Ponzi scheme but then declined to bring civil charges even though the Government decided to prosecute the same conduct. *Rhodes*, 2019 WL 3162221, at *5 ("[T]here is one mystery that remains unsolved – namely, why the SEC, despite its extensive investigation of, and settlement discussions with, Rhodes, has not brought civil fraud charges against him."). Here, the Government and the CFTC began their investigations entirely separately and without each other's knowledge. And in a matter of weeks (not years) they *each* brought charges against Defendant. While the CFTC consented to the Government's request to stay the civil litigation, there is no indication that the CFTC does not intend to resume prosecuting its case immediately following the completion of these criminal proceedings. In fact, the stay was specifically tailored to only cover discovery, thereby allowing the Receiver to continue his work recovering EminiFX investor funds while the criminal case is pending. Folly Aff. ¶ 15(c); CFTC Dkt. 73-1 at 1, 14; CFTC Dkt. 160.

Accordingly, Defendant's request for the Government's communications with the CFTC is denied.

**2. The CFTC's Communications with Defendant, EminiFX, and Various Third Parties, and the CFTC's Internal Communications Regarding Defendant and EminiFX**

Defendant also seeks to compel production of (1) communications between the CFTC and Defendant or EminiFX "relating to CFTC Form 40," Requests ¶ 7(a); (2) internal communications within the CFTC, including communications between the "CFTC's Division of Data and the CFTC's Enforcement Division," relating to submissions made to the CFTC, *id.* ¶ 7(b); Reply at 12; and (3) "[c]ommunications between CFTC personnel and Interactive Brokers, TD Bank, or Bank of America, which could have led to restrictions on accounts at those institutions maintained by Mr. Alexandre or EminiFX," Requests ¶ 7(c). Defendant argues that responses to Requests

7(a) and 7(b) are material because they would "undermine the prosecutors' allegations that Mr. Alexandre 'has never been registered with the CFTC in any capacity' . . . and that he acted with criminal intent."  Motion at 20 (internal alterations omitted) (quoting Complaint ¶ 12(f)).  As to Request 7(c), Defendant argues that the CFTC's "activities, at least at Interactive Brokers, resulted in restrictions on accounts that impacted in-progress trading strategies in a manner that undermines the prosecutors' allegations regarding Mr. Alexandre's investment decisions."  *Id.* at 20-21. According to Defendant, "[t]he content and timing of such communications is relevant to explaining restraints and delays that were imposed on the accounts, and resulting transactions and transfers that the prosecutors have characterized as misappropriations."  Reply at 13.

The Court need not reach the issue of materiality because there are no outstanding documents sought in these Requests that are within the Government's control for the purposes of Rule 16.  In its brief, "the Government has agreed to request from the CFTC any communications between the CFTC's Division of Data and Alexandre, which communications should reflect any purported attempt by Alexandre to register with the CFTC."  Opposition at 22.  The Government also avers that it "has already produced to the defendant records from Interactive Brokers, which production includes correspondence between Interactive Broker[s] and the CFTC.  The Government *does not possess additional communications* between the CFTC and Interactive Brokers beyond that already produced."  *Id.* (emphasis added).  Defendant responds that "[g]iven the constructive possession reflected in the prosecutors' access to that subset of communications from the CFTC's Division of Data, the prosecutors should not be permitted to oppose discovery of CFTC communications relating to other appropriate topics on the basis that they 'do not possess these materials.'"  Reply at 12 (internal alterations omitted) (quoting Opposition at 22).  The Court disagrees.

A Rule 16 motion to compel entails the threshold inquiry of whether the discovery sought is "within the government's possession, custody, or control." *United States v. Stein*, 488 F. Supp. 2d 350, 360 (S.D.N.Y. 2007).  Rule 16 control encompasses more than mere physical possession. *See id.* at 363 ("The rule speaks of 'possession, custody or control,' not simply 'possession.'"). Indeed, "the Government is 'not allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing [its] access to it in preparing [its] case for trial.'"  *United States v. Best*, No. 20 Cr. 28 (VAB), 2022 WL 1605495, at *17 (D. Conn. May 20, 2022) (quoting *Giffen*, 379 F. Supp. 2d at 343).  The Government "need not, however, produce documents from agencies that did not participate in the investigation of the defendant or documents of which it is unaware. . . .  In other words, the prosecutor is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery request."  *See Giffen*, 379 F. Supp. 2d at 343 (internal citation omitted). Thus, "the prosecution must disclose documents material to the defense (1) that it has actually reviewed, or (2) that are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the 'prosecution team.'"  *United States v. Chalmers*, 410 F. Supp. 2d 278, 289-90 (S.D.N.Y. 2006); *see also Best*, 2022 WL 1605495, at *17; *Finnerty*, 411 F. Supp. 2d at 432.

In *Chalmers*, the Honorable Denny Chin, then on the District Court, denied a Rule 16 motion to compel the prosecution's production of "materials within the custody and control of all government agencies that have investigated" the conduct at issue, by consulting Second Circuit caselaw in the *Brady* context.  410 F. Supp. 2d at 287-90.  After noting that "the Second Circuit has espoused the view that *Brady* materials need not be disclosed if the 'prosecution team in the instant case' is unaware of the materials,'" *id.* at 288 (quoting *United States v. Locascio*, 6 F.3d

924, 949 (2d Cir. 1993)), Judge Chin reasoned that the "'government' for purposes of Rule 16 should [not] be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases" because "[t]he concern of the Second Circuit . . . that a 'monolithic view' of government would 'condemn the prosecution of criminal cases to a state of paralysis' applies with equal force in the Rule 16 context." *Id.* at 289 (quoting *Avellino*, 136 F.3d at 255); *see also Finnerty*, 411 F. Supp. 2d at 433-34 (finding that documents related to NYSE's internal investigation of the defendant's trading practices were not discoverable under Rule 16 because "the Government has made the representation that it has not actually reviewed the requested documents" and because the NYSE did not conduct a "joint investigation" with the Government).

Here, the Government states that it is not in possession of any additional documents relating to Requests 7(a), 7(b), and 7(c) other than those which have already been produced to the defense or which the Government has requested from the CFTC and intends to produce upon receipt. *See* Opposition at 22. Moreover, as discussed, the Government did not engage in a "joint investigation" with the CFTC (or the Receiver for that matter) for the purposes of the Government's discovery obligations under *Brady*. *See supra* II.B. That holding applies with equal force to the Government's obligations under Rule 16. *See Chalmers*, 410 F. Supp. 2d at 289. And the prosecutors' access to a subset of CFTC communications, which the Government voluntarily requested, does not implicate control for the purposes of Rule 16. The Court has already concluded herein that the Government's mere ability to access documents in the hands of other agencies does not evoke a joint investigation for *Brady* purposes, *see supra* II.B, and holds the same in the Rule 16 context. *See Finnerty*, 411 F. Supp. 2d at 433 ("The mere fact that the Government may have requested and received documents from the NYSE in the course of its investigation does not convert the investigation into a joint one [under Rule 16].").

Accordingly, Defendant's motion to compel production of certain internal communications within the CFTC and communications of the CFTC with other third parties that the Government has not reviewed, or are not within the Government's possession, custody, or control, is denied.

### 3. Discovery Relating to EminiFX CoinPayments Wallet and Real Estate Investments

Defendant additionally seeks disclosure of "any documents or communications by the DOJ . . . and other materials collected by the DOJ . . . relating to CoinPayments and purchases of real estate by Mr. Alexandre or EminiFX." Requests ¶ 11.[10]  He argues that this discovery is material to anticipated motions to suppress and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), challenging warrants to search EminiFX's office and a phone seized incident to Defendant's arrest.  Motion at 21.  In particular, Special Agent Strawman, the affiant for the affidavits in support of the two warrants, attested that Defendant failed to invest the vast majority of the investor funds he received.  S*ee* Office SW Aff. ¶ 7 ("Instead of using investors' funds as he had promised, ALEXANDRE . . . failed to invest the vast majority of the investors' funds."); Cell Phone SW Aff. ¶ 9 ("ALEXANDRE did not even invest the vast majority of investor funds entrusted to him . . . .").  Yet, Defendant argues, at the time those applications were made, "there was over $100 million invested in Bitcoin in the EminiFX account at CoinPayments."  Motion at 21.  Defendant further argues that Special Agent Strawman omitted that EminiFX also had "invested over $2.5 million in" real estate.  *Id.* at 21-22.  The Government responds that the assertions in Special Agent Strawman's affidavits were not false, and even if they were, those statements were not necessary to a finding of probable cause.  Opposition at 24-25.

---

[10] To the extent Defendant is also seeking similar documents in the sole possession of the CFTC or the Receiver which the Government has not already reviewed, that request is denied for reasons stated above, *see supra* III.B.2—namely, that those documents are not under the Government's possession, custody, or control for the purposes of Rule 16.

Defendant "cannot seek discovery to support his *Franks* challenge without first making the preliminary showing required to grant a *Franks* hearing." *Messalas*, 2020 WL 1666162, at *11; *see id.* (explaining that "discovery requests seeking to support a *Franks* challenge should be denied where a defendant has failed to make the preliminary showing necessary for a *Franks* hearing"); *see also United States v. Harding*, 273 F. Supp. 2d 411, 430 (S.D.N.Y. 2003).  To be entitled to a *Franks* hearing, "a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (citing *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987)).  "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *Id.*

Defendant fails to make a substantial preliminary showing as to either prong.  First, he has not made a preliminary showing that the challenged statements in Special Agent Strawman's affidavits—that Defendant failed to invest the vast majority of the investors' funds—were "deliberate falsehood[s] or reckless disregard for the truth."  While Defendant might reasonably argue that EminiFX's transfers of investor funds to CoinPayments were in fact investments, the Government also reasonably argues that these transfers were merely *deposits* rather than true investments.  *See* Opposition at 25.  And as the Court previously noted when granting Defendant's motion to conduct depositions under Rule 15, "[t]hose arguments are more appropriate for the jury." *Alexandre*, 2022 WL 9843495, at *4.  In other words, Special Agent Strawman could have stated that Defendant "failed to invest the vast majority of investors' funds" on the basis of a belief that the funds in the CoinPayments account were not true investments but merely deposits, without

his statement being deliberately false or recklessly misleading.  Nor can the statement be false solely due to the existence of the $2.5 million in real estate down payments since those payments "constitute[] approximately 1% of investor deposits"—a far cry from the "vast majority" of investors' funds.  Opposition at 24.[11]

Second, any statement concerning whether Defendant failed to invest the vast majority of investors' funds was not material to a finding of probable cause that EminiFX's office and Defendant's iPhone contained evidence, fruits, and instrumentalities of commodities and wire fraud.[12]  To establish commodities fraud, the Government must prove "(1) the making of a misrepresentation, misleading statement, or deceptive omission; (2) scienter; and (3) materiality." *CFTC v. Int'l Fin. Servs. (N.Y.), Inc.*, 323 F. Supp. 2d 482, 499 (S.D.N.Y. 2004) (quoting *CFTC v. R.M. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002)).  Similarly, to establish wire fraud, the Government must prove "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.'"  *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) (explaining that the "scheme to defraud" encompasses a material misrepresentation)).  Here, the affidavits asserted that "[e]ach week EminiFX's website falsely represented to investors that they

---

[11] The Court also notes that the Complaint, which the affidavits incorporated by reference, Office SW Aff. ¶ 5; Cell Phone SW Aff. ¶ 7, contains numerous allegations of specific instances of Defendant misappropriating investor funds.  For example, Defendant allegedly sent over $15 million to a personal checking account, Complaint ¶ 19(f), used over $175,000 for personal expenses including a new BMW and a Mercedes, *id.* ¶¶ 19(g)(i), (ii), donated $15,000 of investor funds to charity, *id.* ¶ 19(h), and used over $120,000 for various legal expenses, *id.* ¶ 19(j).  Special Agent Strawman easily could have relied on this information as well in reaching his view that Defendant did not invest the vast majority of investors' funds.

[12] The search warrant affidavits listed as the Subject Offenses: "7 U.S.C. §§ 9(1) & 13(a)(5) and 17 C.F.R. § 180.1 (commodities fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1348 (commodities fraud); 18 U.S.C. § 371 (conspiracy to commit these offenses); 18 U.S.C. § 2 (aiding and abetting these offenses); and 18 U.S.C. § 1349 (conspiracy to commit wire fraud and commodities fraud)."  Office SW Aff. ¶ 4; Cell Phone SW Aff. ¶ 6.

had earned at least 5% on their investment," Office SW Aff. ¶ 6; Cell Phone SW Aff. ¶ 8, even though "in truth and in fact, and as EDDY ALEXANDRE well knew, EminiFX did not earn 5% weekly returns for its investors," Office SW Aff. ¶ 7; Cell Phone SW Aff. ¶ 9.  In addition, the Complaint, which was incorporated into each search warrant affidavit, alleged that Defendant made similar false promises during the April 28, 2022 EminiFX investor meeting.  *See* Complaint ¶ 13.  Therefore, even if Defendant truly did invest "the vast majority of investors' funds" he received, he could still commit wire and commodities fraud by falsely telling those investors they were earning 5% weekly returns despite knowing that not to be the case.  Accordingly, the contested statement was not "necessary" to a finding of probable cause.

 Much like the defendants in *Messalas* and *Harding*, Defendant has failed to make a substantial preliminary showing necessary for a *Franks* hearing.  *Messalas*, 2020 WL 1666162, at *11; *Harding*, 273 F. Supp. 2d at 430.  Defendant endeavors to distinguish those cases by arguing that "the requests in those cases were much broader than" what he is seeking.  Reply 15.  While "the requirement for a preliminary showing under *Franks* was *designed* to prevent wide-ranging discovery requests," *Messalas*, 2020 WL 1666162, at *11 (emphasis added), Defendant's entitlement to discovery in furtherance of *Franks* motion turns on whether he has made a substantial preliminary showing that his anticipated motion has merit, *see id.*; *Harding*, 273 F. Supp. 2d at 430.  He has not.

Accordingly, Defendant's request for documents in the Government's possession related to the EminiFX CoinPayments account or any real estate transactions is denied.

### 4.    Identities of Witnesses Referenced in the July 28, 2022 Letter

Defendant requests that the Court order the Government to disclose "the identities and contact information of the individuals referenced in the government's July 28, 2022 letter," Requests ¶ 12, arguing that such disclosure is warranted under *Brady*, Motion at 22-23.  On July

28, 2022, the Government sent a letter to the defense with summaries and quotes from over a dozen interviews conducted with EminiFX investors and employees.  *See generally* July 28, 2022 Letter. The July 28, 2022 Letter disclosed, *inter alia*, the following statements made by interviewees:

- An EminiFX employee identified as "Employee-1" said that "[e]mployees in the office had an 'extreme urgency' to do things accurately and the right way."  *Id.* at 3.

- An EminiFX employee identified as "Employee-2" "believed the operation was legitimate."  *Id.*

- An EminiFX employee identified as "Employee-3" thought that "the company's intent was to follow the law."  *Id.* at 5.

- An EminiFX employee identified as "Employee-4" observed that EminiFX "seemed to be a legitimate company, as they had traders, an accounting department, and a human resources department."  *Id.*

- An investor identified as "Investor-4" stated that Defendant "didn't pressure anyone to invest or join" EminiFX.  *Id.* at 4.

In the July 28, 2022 Letter, the Government explicitly disclaimed "conceding that this information constitutes material exculpatory information under *Brady v. Maryland* and its progeny."  *Id.* at 1.  And now in opposing further disclosures, the Government characterizes its July 28, 2022 Letter as "early 3500" material and resists revealing the witness's identities primarily on the basis that their statements are not actually exculpatory.  Opposition at 28.  Describing Defendant's alleged fraud as a "Potemkin village," the Government reasons that "part of the fraud here was creating an environment where employees and investors *thought* this was a legitimate operation."  Oct. 5, 2022 Oral Arg. Tr. at 45-46 (emphasis added).  Thus, the Government argues, statements by employees and investors that EminiFX appeared legitimate are not actually

32

exculpatory because those witnesses "did not have visibility into how investor funds were actually used . . . .  Rather than being exculpatory, [these] statements demonstrate how Alexandre was able to accomplish the fraud: by deceiving others into thinking EminiFX was a legitimate investment business."  Opposition at 29.

The Court agrees with the Government's decision to produce the information contained in the July 28, 2022 Letter with respect to the five individuals discussed above.[13]  The statements that EminiFX endeavored to operate legitimately, for example, could speak to Defendant's mental state, an element of both offenses charged.  While it is certainly possible that those statements will accord with the Government's prosecution theory, at this stage the Court cannot assume that to be the case.  Rather, Defendant is entitled to explore whether the witness statements are consistent with his theory or the Government's theory of the case, as well as whether those individuals otherwise possess exculpatory information.  *Cf. United States v. Mahaffy*, 693 F.3d 113, 130 (2d Cir. 2012) (explaining that "[w]here suppressed evidence is inculpatory as well as exculpatory, and 'its exculpatory character harmonizes with a theory of the defense case,'" disclosure is appropriate (quoting *United States v. Triumph Cap. Grp.*, 544 F.3d 149, 164 (2d Cir. 2008))).

The Government therefore was right to disclose the statements from Employee-1, Employee-2, Employee-3, Employee-4, and Investor-4.  But for the defense to be able to make effective use of that information in preparation for trial, the defense also needs information—in the form of names and any contact information—for these individuals.  This information should be provided promptly, particularly given the nature of this case.  With trial scheduled to commence in just over two months, and the extremely voluminous amount of discovery already produced, the

---

[13] Based on the interview summaries in the July 28, 2022 Letter, the Court does not find that further disclosure is required for any of the other individuals mentioned in that letter.

defense must receive the information in ample time to make effective use of it. *Cf. Leka v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001) ("When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case.").

The Government expresses concern with disclosing the identities of these witnesses relating to "potential witness harassment and improper efforts [to] influence witnesses once they are identified to Alexandre." Opposition at 28; *see also id.* at 28-29 (requesting, in the event the Court orders production of the witnesses' names, that the Court "appoint independent legal counsel [or 'pool counsel'] under the Criminal Justice Act for individuals the Government identifies to the defense as potential witnesses . . . to assert any privacy interests they may have and to ameliorate any concerns about improper influence and intimidation"). A court may under Rule 16(d) "limit or otherwise regulate discovery had pursuant to the Rule." *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991); *accord* Fed. R. Fed. Rule Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."). At oral argument, the Government pointed only to general concerns about "sensitivity about people's names getting out there" in light of the fact that "this case has gotten a fair amount of publicity" and "the passion of Mr. Alexandre's supporters." Oct. 5, 2022 Oral Arg. Tr. at 49-50; *cf. Urena*, 989 F. Supp. 2d at 262-63 (permitting redaction of witness identity because defendants were charged with murder and the content of the 911 call showed the witness feared for her life). The Court does not find the expressed concerns sufficient to deny disclosure of the witnesses' identities. Nor does the Court find it necessary to appoint counsel for the individual witnesses on the basis of the information currently before the Court. The Court will, however, consider a

protective order to protect the privacy interests of these witnesses, and encourages the parties to meet and confer to propose the scope of such an order.

Accordingly, Defendant's motion to compel disclosure is granted with respect to names and contact information for the individuals identified as Employee-1, Employee-2, Employee-3, Employee-4, and Investor-4 in the Government's July 28, 2022 Letter.

### 5. Rule 12(b)(4)(B) Notice

Defendant also seeks "notice, pursuant to Rule 12(b)(4)(B) of 'the government's intent to use (in its evidence-in-chief at trial)" any evidence collected from the phone seized incident to Defendant's arrest, electronic devices seized during the search of EminiFX's office, and evidence obtained from the CFTC or the Receiver.  Motion at 24; *accord* Requests ¶ 5.  The Government represents that it "has already obtained from the Receiver and produced to the defense EminiFX electronic message content" and that its investigation is "ongoing, and to the extent the Government obtains additional electronic evidence that is subject to disclosure under Rule 16 or any other rule of criminal discovery, it will produce it to the defense."  Opposition at 32.  Defendant maintains "that Rule 12(b)(4)(B) requires a more direct response."  Reply at 19.

Pursuant to Rule 12(b)(4)(B), a "defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16."  The rule does not, however, impose an obligation on the Government "to identify for the defense potentially suppressible evidence" or "require the Government to preview its case." *United States v. Conyers*, No. 15 Cr. 537 (VEC), 2016 WL 7189850, at *10 (S.D.N.Y. Dec. 9, 2016) (internal quotation marks omitted); *see also United States v. Ishak*, 277 F.R.D. 156, 158-59 (E.D. Va. 2011) ("[D]efendants cannot invoke Rule 12(b)(4)(B) to force the government to decide precisely which documents provided in discovery it will offer at trial and to prevent it from using

any that it does not so designate as a matter of trial tactics." (internal quotation marks omitted)). "In order to trigger a notice obligation, the defendant's request must identify potentially suppressive evidence *with specificity*." *Ishak*, 277 F.R.D. at 159 (emphasis added). "In other words, the defendant must first identify specific evidence discoverable under Rule 16 that may be the subject of a future suppression motion before the Government must provide notice of whether it intends to offer that specified evidence during its case-in-chief." *United States v. Mills*, No. 16 Cr. 20460 (MAG), 2019 WL 76870, at *2 (E.D. Mich. Jan. 2, 2019).

Defendant requests notice of any pieces of evidence obtained from the following sources: (1) "[e]lectronic device(s) seized in connection with [his] arrest," Requests ¶ 5(a); (2) "[e]lectronic devices obtained from EminiFX's offices," *id.* ¶ 5(b); and (3) evidence obtained from the CFTC or the Receiver, *id.* ¶ 5(c). While Defendant characterizes these as "specific categories," Reply at 18, by his own acknowledgement, they appear make up almost the entirety of the Government's investigative file. *See* Dkt. 56 at 1 ("Excluding documents and devices seized by the FBI at EminiFX, Inc., the prosecutors have produced approximately 1,335,554 pages of discovery. The CFTC and Receiver appear to have given the prosecutors approximately 1,329,735 of those pages—roughly 99%. Based on these figures, to the extent the prosecutors are producing a ton of stuff that CFTC was not the source of, that category of discovery consists principally of materials (1) provided to the prosecutors by the CFTC-backed Receiver, or (2) that the FBI seized on May 12, 2022, pursuant to a warrant that the prosecutors obtained based on records, a recording, and other information from the CFTC." (citations and quotation marks omitted)). This is consistent with the affirmations made in the Government's affidavits; indeed, it appears that the Government's investigative actions have largely entailed reviewing documents from the CFTC and Receiver, Folly Aff. ¶¶ (9)(e), 14(c), 15(a)-(b), and searching and seizing evidence from

EminiFX's office, *see* Strawman Aff. ¶¶ 9-15.  Accordingly, the categories of evidence which Defendant has identified are not sufficiently specific to trigger any notice obligations from the Government.  *See Ishak*, 277 F.R.D. at 160 (denying motion for Rule 12(b)(4)(B) notice because the "defendants' requests that the government designate its evidence and any calls, transcripts, and physical evidence pertaining to the defendants are insufficiently specific" (internal quotation marks and footnotes omitted)); *Conyers*, 2016 WL 7189850, at *10 (denying motion to compel Rule 12(b)(4)(B) notice; noting that "[r]ather than identifying discoverable evidence that might be the subject of a motion to suppress, [the defendant] requests a complete accounting of 'any and all' evidence that the Government may use at trial").

Because based on the information before the Court, it appears "that the Government has and continues to fulfill its discovery obligations, there is no need for the Court to further order early disclosure." *Conyers*, 2016 WL 7189850, at *11.  Accordingly, Defendant's request for notice pursuant to Rule 12(b)(4)(B) is denied.

### 6.  Timing of Forensic Imaging

Defendant's final Rule 16 request "seeks disclosures relating to when the prosecution team started to copy data from the 57 electronic devices collected from EminiFX's office."  Motion at 25; *see also* Requests ¶ 8.  Defendant argues this information is material so that he "can evaluate potential motions relating to delays in search execution and based on the prosecution team's inability to meet discovery deadlines."  Motion at 25.  In particular, Defendant anticipates arguing that a delay in the Government's review of electronic devices seized pursuant to its search of EminiFX violated the Fourth Amendment, Rule 16(d), and possibly his right to a speedy trial if the Government fails to complete its search in time for trial.  Reply at 19.  In addition, Defendant argues the evidence is relevant to assessing whether the Receiver's consent for the Government to

continue searching the electronic data seized indicates improper coordination in violation of due process. *Id.* at 19-20.

As noted, *see supra* III.A, because Defendant's theory of Rule 16 materiality is premised on relevance to anticipated motion practice, he must make a threshold showing that the anticipated motion has merit and that the evidence sought is relevant to arguments in that motion. *See, e.g.*, *Berrios*, 501 F.2d at 1211-12; *Messalas*, 2020 WL 1666162, at *11; *Rhodes*, 2019 WL 3162221, at *4. Defendant has failed to make such a sufficient preliminary showing with respect to the Government's alleged delay in searching the electronic devices. Federal Rule of Criminal Procedure 41(e)(2)(A)(i) mandates that a "warrant must command the officer to . . . execute the warrant within a specified time no longer than 14 days." The purpose of this rule "is to prevent a stale warrant." *United States v. Triumph Cap. Grp., Inc.*, 211 F.R.D. 31, 66 (D. Conn. 2002). However, "the Government does not need to copy the entire storage medium or review the [electronically stored information ("ESI")] in order to execute a search warrant for ESI." *United States v. Estime*, No. 19 Cr. 711 (NSR), 2020 WL 6075554, at *13 (S.D.N.Y. Oct. 14, 2020). "Moreover, neither Rule 41 nor the Fo[u]rth Amendment impose[s] any time limitation on the government's forensic examination of the evidence seized" pursuant to a validly executed warrant. *Triumph Cap. Grp., Inc.*, 211 F.R.D. at 66. In fact, "[c]ourts have previously determined that delays of 10 months, or more, in reviewing electronic data are not *per se* unreasonable, even when the government does not furnish a basis for the delay in searching electronic data." *Estime*, 2020 WL 6075554, at *14 (collecting cases).

Here, the Government executed its search warrant on May 12, 2022—one day after the warrant was issued (and therefore well-within Rule 41's fourteen-day requirement). *See* Opposition at 35; Reply at 19. Defendant complains that the Government "did not even begin to

produce complete images of the devices . . . until August 30" and that, as of September 23, 2022, their production still was not complete.  Reply at 19.  But the Government recently reported to the Court that it completed its review of the seized electronic devices on or about November 18, 2022, and also that it has completed its production of discovery of materials currently within its possession.  Dkt. 69 at 1 & n.1.  This timeline is well-within the range of acceptability.  *Estime*, 2020 WL 6075554, at *14 (collecting cases); *see also United States v. Sosa*, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019) ("Given that the searches were executed pursuant to valid warrants, commenced shortly after execution, and completed nearly three months prior to defendant's scheduled trial . . . we find the searches within the bounds of reason and decline to suppress evidence on account of the pace at which they were performed.").  This is particularly so in light of the reasons cited by the Government for its delay—namely "the number and storage size of the devices, as well as the need to address potential privilege issues."  Opposition at 35; *cf. Estime*, 2020 WL 6075554, at *15 (finding delay in reviewing ESI not unreasonable in light of "difficulties created by . . . encryption"); *Sosa*, 379 F. Supp. 3d at 222 (finding a delayed review of electronic evidence not unreasonable considering "the reason[] for the delays here . . . is one of resource allocation").[14]

Moreover, any speedy trial concerns posed by the Government's timeline for reviewing the electronic devices it seized during the EminiFX search are premature and speculative—and based

---

[14] Defendant cites to *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), for the proposition that "Fourth Amendment reasonableness does not extend to law enforcement collecting devices and holding on to them without actually searching their contents, thereby delaying the return of property to private citizens."  Reply at 15.  In *Smith*, however, the New York City Police Department seized a tablet incident to the defendant's arrest but then only applied for a search warrant thirty-one days later.  *Id.* at 202-03.  Here, there is no suggestion that the Government delayed in its initial application to search the electronic devices.  And in fact, Defendant's arrest and the search and seizure occurred on the same day.

on the Government's recent status update, Dkt. 69, would appear unlikely to have merit unless circumstances change.  The Court has set a trial date of March 27, 2023.  Dkt. 35 at 22.  Defendant has consented to an exclusion of time under the Speedy Trial Act until that date.  *See* Dkt. 45 at 2; *see also* Dkt. 46 (excluding time "under the Speedy Trial Act for the purposes of allowing the defense to review discovery, the litigation of pre-trial motions, and motions *in limine*, and the preparation for trial").  The Government has made no application to adjourn trial or for a further exclusion of time under the Speedy Trial Act.  And most importantly, the Government completed its review of the electronic data seized on November 18, 2022, and represents that its production of discovery in its current possession is complete.

Nor is information relating to the timing of the Government's forensic imaging material to a *Kordel* motion on the theory that the Receiver improperly gave consent to the Government to search the seized devices.  The fact that the Receiver executed a consent to search form is already known to Defendant, as that consent form was produced to him on July 21, 2022.  *See* Motion at 11; *see also* First Bove Aff., Exh. J.  If Defendant wishes to challenge the Receiver's authority, or its relationship with the Government on this basis, he has the information he needs to do so.

Accordingly, because Defendant has failed to make a threshold showing that any anticipated motion would have merit, or that the evidence sought under Rule 16 would be material to such motions, his request for disclosure of information related to the timing of the Government's review of electronic devices seized is denied.

## IV.  Conclusion

For the foregoing reasons, Defendant's Motion is granted in part and denied in part.  Defendant's request for disclosure of the identities and contact information of the individuals identified as Employee-1, Employee-2, Employee-3, Employee-4, and Investor-4 in the

Government's July 28, 2022 Letter is granted.  The parties are directed to meet and confer to negotiate in good faith for a protective order to address the Government's concerns regarding witness safety; but unless ordered otherwise, the Government must disclose the witness identities no later than five business days following this Opinion and Order.  All other requested relief is denied.  The Clerk of Court is respectfully directed to close Docket Numbers 55 and 60.

     SO ORDERED.

Dated: January 26, 2023  
     New York, New York                        _____  
                                        JOHN P. CRONAN  
                                United States District Judge