UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDDY ALEXANDRE, | | **AFFIDAVIT** |
| | Movant, | |
| v. | | 24 Civ. 5767 (JPC) |
| | | 22 Cr. 326 (JPC) |
| UNITED STATES, | | |
| | Respondent. | |

1. I respectfully submit this affidavit in response to the Court's December 30, 2024 and April 10, 2025 orders. *See* ECF Nos. 136, 138.[1]

2. I represented Eddy Alexandre in this case and the related CFTC enforcement proceeding between approximately May 11, 2022 and February 20, 2024. *See* ECF No. 274, *CFTC v. Alexandre, et al.*, No. 22 Civ. 3822 (VEC). Because Mr. Alexandre has entered a written waiver of the attorney-client privilege in connection with his § 2255 motion, this affidavit contains otherwise-privileged information relating to my representation of Mr. Alexandre in this case. *See* ECF No. 137. Because I have transitioned jobs since the events in question and lack access to many of the relevant documents, I have recounted the substance of this information to the best of my recollection below.

3. As soon as I was retained by Mr. Alexandre, I worked diligently to conduct an independent factual investigation as part of his defense (and in connection with my review of pretrial discovery), which ultimately supported a successful bail application, *see* ECF Nos. 7, 11; pretrial motion practice, ECF Nos. 39-41; and (as discussed below) sentencing advocacy.

---

[1] Unless otherwise noted, citations to "ECF No." are to the public docket in 22 Cr. 326 (JPC).

2

4.     Throughout my representation of Mr. Alexandre, he was understandably concerned about his sentencing exposure in connection with any guilty plea. In response to those concerns, I told him several times that there was virtually no chance of avoiding a term of incarceration if he was convicted because of the prosecutors' position regarding the loss amount as well as the quantity and characteristics of the victims. I was also attentive to the potential immigration and other collateral consequences of any conviction, including but not limited to implications of a conviction for the CFTC proceeding. *See, e.g.*, 2/10/23 Tr. 17:25-18:19; ECF No. 86 at 29-34 (summarizing collateral consequences). Consequently, I was careful to discuss with Mr. Alexandre all of those potential consequences, all aspects of the strategy relating to plea negotiations, and the details of each plea offer that the prosecutors described or extended in the case. We had numerous, lengthy conversations about these topics, including debriefings to Mr. Alexandre regarding my communications with the prosecutors about bail conditions, discovery, and plea negotiations.

5.     Mr. Alexandre pleaded guilty pursuant to a written plea agreement on February 10, 2023. I advised Mr. Alexandre to accept that plea based on his statements to me regarding the underlying facts, and because the agreement capped his sentencing exposure at 120 months despite a likely Guidelines range that was much higher. *See* PSR ¶ 94 (calculating Guidelines range of 210-262 months capped at 120 months).

6.     Prior to the February 10, 2023 proceeding, I had several discussions with Mr. Alexandre regarding all of the terms of the operative plea agreement. *See* 2/10/23 Tr. 11:12-23. Based on those conversations, including Mr. Alexandre's responses to me, Mr. Alexandre understood the rights he would be required to waive by pleading guilty, which included the right to pursue suppression motions, *see, e.g.*, 2/10/23 Tr. 6:7-15, 9:10-18, 10:3-16; and the right to

3

appeal any sentence of ten years or less, 2/10/23 Tr. 22:25-23:9, 24:6-8. Consistent with what Mr. Alexandre had said to me up to that point, he stated under oath on February 10, 2023 that he was "[c]ompletely" satisfied with his legal representation. 2/10/23 Tr. 24:9-11.

7. As a result of several preparatory conversations between me and Mr. Alexandre before his guilty plea, I understood that Mr. Alexandre was only willing to enter a relatively narrow factual allocation. Prior to the guilty plea, I conducted extensive legal research regarding the elements of the offense and worked carefully with Mr. Alexandre to craft language for his allocution that was factually accurate, legally sufficient, and limited to information that Mr. Alexandre was willing to admit to the Court under oath. I carefully reviewed the language with Mr. Alexandre multiple times before the guilty plea, including in the attorney lounge of the courthouse just before the proceeding commenced. During the review, I made clear to Mr. Alexandre that it was critical that the language be accurate and that he be comfortable with it. Mr. Alexandre assured me that the language was accurate prior to entering his allocution on February 10, 2023, and Mr. Alexandre tracked the substance of the language during his allocution that day. *See* 2/10/23 Tr. 25:8-26:1.

8. Following Mr. Alexandre's allocution, one of the prosecutors asked the Court to ask Mr. Alexandre whether he "acted with the intent to defraud the investors." 2/10/23 Tr. 26:2-6. Based on my earlier conversations with Mr. Alexandre and my preparations for the proceeding, I knew that Mr. Alexandre did not believe he acted with that type of intent. I successfully advocated to the Court that the prosecutors' formulation was not necessary in order for the guilty plea to be legally sufficient. *Id.* at 26:7-32:11.

9. Prior to Mr. Alexandre's sentencing on July 18, 2023, I worked with Mr. Alexandre to develop our factual presentation, advocate to the Probation Office regarding

4

mitigating considerations and the appropriate sentence, prepare several written submissions to the Probation Office and the Court, and collect numerous letters in support of Mr. Alexandre. *See, e.g.*, ECF No. 86.

10. During the course of our sentencing preparations, I had several conversations with Mr. Alexandre in which I explained my view that there was not a credible argument to avoid at least some incarceration. Mr. Alexandre rejected my advice that we should concede that a specific number of months' imprisonment was appropriate. The principal sentencing submission included the more general concession—which Mr. Alexandre specifically approved—that a prison term "substantially below" the applicable Guidelines range was appropriate. ECF No. 86 at 4, 27, 48.

11. Before the July 18, 2023 sentencing hearing, Mr. Alexandre and I discussed pending objections to the PSR and agreed on which objections I would continue to press at the hearing. *See* 7/18/23 Tr. 13:12-40:22.

12. Near the conclusion of the July 18, 2023 sentencing hearing, the Court advised Mr. Alexandre of his right to appeal. 7/18/23 Tr. 120:11-18. After the sentencing hearing, I discussed the right to appeal with Mr. Alexandre in the courthouse. I explained to him that I did not think there was a colorable basis for an appeal because of, among other things, the waiver in his plea agreement and the below-Guidelines sentence issued by the Court. Mr. Alexandre did not direct me to file a notice of appeal.

13. After the sentencing, Mr. Alexandre and I turned our attention to the CFTC enforcement proceeding. We communicated regularly between July 2023 and February 2024, but Mr. Alexandre did not direct me to file an appeal after we left the courthouse on the day of his sentencing. At no time between July 2023 and February 2024 did Mr. Alexandre claim to me

5

that he was actually innocent, and I have no recollection of him suggesting that there was a basis to withdraw his plea or vacate his plea agreement.

14.   While it is true that I met with Mr. Alexandre and his wife to discuss legal fees that he owed, there was no suggestion in that meeting or any related conversation that the defense team would seek to terminate the representation if Mr. Alexandre did not make his account current.  No one in the meeting that Mr. Alexandre referenced in his § 2255 motion asserted that we would withdraw if he chose to proceed to trial.  Following that meeting, I spent a significant amount of time on Mr. Alexandre's guilty plea and sentencing despite my understanding that he would not be able to pay the associated fees.

15.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 18, 2025

                                                           /s/
                                                         Emil Bove